PEDRO CELESTINO LÓPEZ y su esposa JUANA ROMÁN BARRETO, demandantes y apelantes, *v.* RICARDO LÓPEZ y su esposa HILARIA CUEVAS, demandados y apelados.

No. 5935.—*Sometido:* Junio 9, 1933. *Resuelto:* Diciembre 21, 1934.

838

*Buenaventura Esteves,* abogado de los apelantes; *García Méndez & García Méndez,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

█ Conforme se desprende de una escritura fechada en 7 de septiembre de 1928, Pedro Celestino López y su esposa otorgaron una hipoteca a favor de Ricardo López, para garantizarle el pago de la suma de $2,089.06. La propiedad gravada fué descrita en debida forma en la demanda. Ricardo López inició procedimiento ejecutivo sumario contra Pedro Celestino López y su esposa. Mientras este procedimiento hipotecario estaba pendiente, Pedro Celestino López y su esposa entablaron el presente litigio, no sólo para anular el procedimiento ejecutivo, sino también la escritura en que el mismo se basaba. En la demanda se aducía que la escritura de septiembre 7, 1928, fué una pura simulación y que no pasó causa (*consideration*) alguna entre las partes contratantes.

Toda vez que en la demanda se alegaba que la prueba de simulación constaba en documentos auténticos, los demandados Ricardo López y su esposa solicitaron se les mostraran dichos documentos y la corte así lo ordenó. Los demandantes en el presente recurso presentaron entonces dos cheques que se suponían haber sido expedidos contra el Banco Industrial de Puerto Rico, siendo el primero el número 66, aparentemente suscrito en blanco por Ricardo López, y el segundo el número 211, firmado igualmente en blanco por Ricardo López.

Al recibir estos documentos los demandados contestaron. El demandante en el presente litigio, Pedro Celestino López, falleció antes del juicio y se le sustituyó con sus herederos. Al comenzar el juicio los demandantes solicitaron permiso para mostrar a los demandados cierto documento que ellos alegaban se había perdido y más tarde había sido hallado, y que lee así:

"Conste por el presente extrajudicial documento que quiero tenga la misma fuerza y validez como si judicial fuera, que yo Ricardo

López, mayor de edad, casado y vecino de Lares, he entregado en el día de hoy a mi hermano Pedro C. López dos cheques sin llenar pero firmados de mi puño y letra y estos cheques son un resguardo para mi hermano presentarlos en el Banco Masónico de Puerto Rico en el que tengo mis cuentas una vez llenos por la suma de dos mil ochenta y nueve dollars seis centavos, valor de la escritura de hipoteca que me hizo con el abogado Sandalio García Ducós por esa cantidad para que el día que él necesitara la finca sin gravamen pueda conseguirla sin trastorno de mi parte ni de mis familiares, pues quiero hacer constar que mi hermano Pedro Celestino López nada me debe ni ahora ni antes, pues todo esto se hace para defender sus bienes de pleitos en el mañana. Lares, Puerto Rico, septiembre 7 de 1928.— (*Firmado*) Ricardo López.''

Al presentarse este documento la corte estuvo dispuesta a suspender el juicio, mas los demandados anunciaron su deseo de que se continuara el mismo. Para probar las alegaciones de la demanda los demandantes pusieron primeramente a Ricardo López, el demandado principal, en la silla de los testigos. Al ser interrogado por el letrado de los demandantes, este testigo hizo una relación detallada de todas las cuestiones que surgieron entre él y su hermano Pedro Celestino. Ofreció testimonio tendente a demostrar que su hermano Pedro Celestino López le adeudaba el importe de la hipoteca con motivo de la liquidación por ellos hecha de los negocios de la sociedad previamente existente entre el testigo y dicho hermano. Tanto en el examen directo como en la repregunta él insistió en que la transacción celebrada por él y su hermano fué legítima. Durante el examen directo admitió que las firmas que aparecían en los dos cheques en blanco y en el documento que también se había ofrecido en evidencia eran suyas, pero explicó ampliamente las razones para ello. Manifestó, y su declaración fué sostenida por otra prueba, que su sobrino estaba asociado con él en la sociedad y que él, Ricardo López, acostumbraba entregarle cheques en blanco para que su sobrino llenara la cantidad; que de igual modo él ponía su firma en hojas de papel en

blanco para que su sobrino escribiera el contenido de las cartas.

El demandante puso al sobrino a declarar, así como a la esposa de Pedro Celestino López, y la declaración de ambos tendió a demostrar que la escritura era simulada.

Entonces el demandado presentó varios testigos, incluyendo el notario principal que había intervenido en el asunto, a fin de probar en efecto que la escritura de hipoteca era en realidad un documento legítimo, y la corte así lo creyó.

La corte dijo que no tenía duda de que los cheques números 66 y 211 fueron firmados en blanco por Ricardo López. Con los talonarios del libro de cheques a la vista la corte quedó convencida de que los cheques fueron expedidos sin orden de fechas y por ello dudaba de la autenticidad de uno de los cheques y también porque en el manuscrito de uno de los talonarios de dichos cheques el sobrino, José María López, había puesto la palabra "nulo". La corte hizo el comentario de que parecía raro que el sobrino hubiera puesto tal palabra si sabía que el cheque en realidad era válido.

Echando a un lado por el momento otros errores señalados por los apelantes, no tenemos duda de lo correcto de la conclusión a que llegó la corte inferior. En realidad, somos del criterio de que toda la prueba tendió a demostrar que la escritura de hipoteca no era simulada y que el sobrino se aprovechó del hecho de tener en su poder cheques en blanco y el papel en blanco con la firma para hacer constar que la escritura era en efecto simulada.

Es difícil entender la forma complicada en que las partes llevaban sus asuntos si la escritura era simulada. La simple cancelación de la hipoteca hubiese bastado y había otras formas en que los dos hermanos podían haber llevado a cabo su objetivo sin haber expedido estos cheques en blanco y sin que Ricardo López tuviera que escribir el documento relativamente complicado en que se suponía reconocer la simulación. La corte comenta la forma en que estaba redactado este documento en el sentido de que de ordinario nadie lo hubiese

escrito en el espacio reducido que el documento ofrecido en evidencia presentaba. Es un hecho algo significativo que ese documento tan sólo fuera hallado después de morir Pedro Celestino López. Quizá él no hubiera ido al extremo de aseverar que tenía este documento en su poder. Su esposa declaró que ella lo encontró en la ropa de él después de su muerte.

■ El alegato de los apelantes es deficiente, toda vez que no contiene la debida relación del caso. Frecuentemente hemos comentado el hecho de que incumbe al apelante no meramente exponer las alegaciones sino demostrar sobre qué giró realmente el caso en la corte inferior.

El primer señalamiento de error es que la corte no debió haber permitido prueba respecto a las manifestaciones u observaciones de Pedro Celestino López, toda vez que éste había muerto. El apelado hace constar claramente que el testigo fué realmente llamado por la parte contraria y que tenía perfecto derecho a hacer una explicación. Sea ello como fuere, la prueba de los verdaderos hechos fué tan fuerte que no revocaremos por este motivo.

■ Hemos resuelto, y ésa es la ley, que es innecesario presentar los originales de las escrituras que constan en el protocolo de un notario, sino que bastan copias de las mismas.

■ Los apelantes también insistieron en que a Alberto García Ducós, que fué el notario que intervino en este caso, no debió permitirse manifestar lo que Pedro Celestino López le había dicho. La teoría es que Alberto García Ducós era el abogado de Pedro Celestino López. Sin embargo, es claro que en este caso él no actuó como letrado sino como notario con instrucciones recibidas de su cliente.

Al principio de esta opinión hemos cubierto los demás señalamientos de error.

*Debe confirmarse la sentencia apelada.*