HERMINIO LUGO ORTIZ, demandante y recurrido, *v.* ENRIQUE
LUGO ORTIZ y JAIME FERRER, demandados y recurrente
el segundo.

*Número:* 298 *Resuelto:* 29 de junio de 1962

*Luis A. Negrón López* y *Luis Nieves López,* abogados del recurrente; *Aníbal Padilla,* abogado del recurrido.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Contra la sentencia del tribunal de instancia que declaró con lugar la acción de retracto interpuesta por Herminio Lugo Ortiz, el demandado Jaime Ferrer interpuso recurso de revisión fundado en la comisión de los siguientes errores: 1) la desestimación de la defensa de prescripción de la acción; y, 2) la negativa a admitir en evidencia el testimonio del secretario del notario ante quien se otorgaron los documentos públicos de compraventa que dieron margen al litigio. Precisa un breve resumen de los hechos para entender adecuadamente estos planteamientos.

Al fallecimiento de los cónyuges don Mariano Lugo Ortiz y doña María Ortiz Vega, se creó una comunidad hereditaria de la cual formaban parte, entre otros, sus sucesores Her-

minio, Enrique, Carlos, Antonio y Fidelina Lugo. Mediante la escritura número 43 de 13 de noviembre de 1957 otorgada ante el Notario William Morales Torres, el demandado Jaime Ferrer adquirió todos los "derechos y acciones" que correspondían al coheredero Enrique Lugo Ortiz en la comunidad, de cuya cesión se alega tuvo conocimiento el demandante en 21 de diciembre siguiente. Cinco días después inició acción para retraer esta participación indivisa y al efecto consignó a favor del comprador la suma de $750.00, precio de la venta, y contrajo la obligación de satisfacerle los gastos del contrato y cualquier otro pago legítimo hecho para la venta, así como los gastos hechos en la cosa vendida. Artículo 1407 del Código Civil, ed. 1930, 31 L.P.R.A. sec. 3912. Conforme a la Regla 33 de las de Enjuiciamiento Civil entonces vigente, el actor mencionado notificó interrogatorios al demandado en 25 de marzo de 1958, y entre la información solicitada inquirió de éste sobre la extensión de cualquier participación dominical que tuviera en los bienes del caudal hereditario que se habían descrito en la demanda. En 29 de abril siguiente el demandado indicó que había adquirido la participación de Enrique Lugo mediante la escritura ya mencionada, y, subsiguientemente, las correspondientes a los coherederos Carlos, Antonio y Fidelina Lugo, en enero y febrero de 1958.

Al tener conocimiento de estas últimas cesiones, en 5 de mayo, el demandante presentó una moción dentro del pleito ya iniciado, que denominó de consignación, manifestó su intención de retraer las participaciones vendidas y procedió a depositar la cantidad de $2,450.00, importe del precio de venta. No incorporó ninguna otra alegación. En 10 de julio, el tribunal dictó una resolución ordenándole al actor la radicación de una demanda enmendada "a fin de que el pleito se tramite con toda corrección procesal y se asegure completa justicia entre las partes." Así se hizo seis días después, en 16 de julio.

1—Insiste el demandado en que, en cuanto se refiere a las últimas tres participaciones, la acción de retracto está prescrita por haberse interpuesto después del término de nueve dias contados desde que el retrayente alega que tuvo conocimiento de la transacción de venta, ya que entre la fecha de la notificación de la contestación a los interrogatorios— 29 de abril—y la presentación de la demanda enmendada— 16 de julio—transcurrieron setenta y ocho días ▮▮

El término para el ejercicio de la acción en este caso no es de nueve días, como afirma el recurrente, sino el de treinta días prescrito por el artículo 1020 del Código Civil, ed. 1930, 31 L.P.R.A. sec. 2886. Según dijimos en *Rivera Esbri* v. *Archevald*, 83 D.P.R. 604 (1961), "aun concurriendo la comunidad por transmisión hereditaria, cuando el coheredero meramente vende su participación indivisa en uno o varios bienes determinados de la herencia, el recurso que asiste a su coheredero retrayente es el retracto de comuneros. Para que tenga lugar el retracto sucesorio es preciso que el objeto de la transmisión haya sido la cuota o participación hereditaria del heredero en el caudal, pues como hemos apuntado, la razón que informa el precepto es evitar el advenimiento de un extraño a las operaciones de partición. De ahí que el precepto legal expresamente disponga que puede recurrirse a la subrogación sucesoria únicamente cuando la venta haya ocurrido *antes* de la partición. Scaevola, *op. cit.*, pág. 667, indica que este derecho de retraer subsiste 'mientras dure la comunidad que hace cesar la partición', y alude a fallos de la jurisprudencia francesa en que se declara que dicho retracto 'no debe ser admitido cuando la cesión no comprendió el conjunto de los derechos sucesorios del cedente, sino solamente una cuota-parte en uno o en muchos inmuebles determinados' (pág. 764). Finalmente expresa que cuando se trata de 'realizada una venta de cosas determinadas de la herencia, [ello] obsta al ejercicio del derecho de retracto sucesorio.' (pág. 675). El Tribunal Supremo de España en Sentencia de 12 de febrero de 1904 (97 Jurisp.

Civil, pág. 331) expresamente manifiesta que el artículo 1067 del Código Civil Español, correspondiente al 1020 de Puerto Rico, sólo se aplica cuando se trata de un derecho sucesorio indeterminado. Véase además, Calvo y Camina, *Contrato de Coherederos*, Revista de Derecho Privado, t. II, pág. 176 (1915)." Como en el presente caso el objeto de la transmisión fueron los derechos indeterminados en la totalidad de los bienes del caudal, se trata de un retracto sucesorio, para el cual se señala un término de treinta días. Es por eso que tampoco era necesario contraer el compromiso de no vender durante cuatro años los tres condominios a retraerse, según se requiere por el inciso 5 del artículo 1616 de la Ley de Enjuiciamiento Civil para Cuba y Puerto Rico; *Fuertes* v. *Arzón*, 81 D.P.R. 491 (1959); *Quiñones* v. *Alcaide*, 72 D.P.R. 718 (1951); *Vellón* v. *Central Pasto Viejo*, 34 D.P.R. 233 (1925); pues esta alegación caracteriza y únicamente se exige en el retracto de comuneros, *Zalduondo* v. *Iturregui*, 83 D.P.R. 1 (1961); *Noble* v. *Rodríguez*, 69 D.P.R. 482 (1949); *Martínez* v. *Pirallo*, 61 D.P.R. 91 (1942).(¹) 

Siendo la acción de retracto en esta jurisdicción una acción civil ordinaria, su tramitación se rige por las disposiciones de las Reglas de Enjuiciamiento Civil, *Zalduondo* v. *Iturregui*, 83 D.P.R. 1, 18 (1961), cuyo propósito esencial es permitir la adjudicación de las controversias en forma rápida y económica, libre de formalismos y sutilezas puramente legalistas. Si bien puede concederse que el trámite más adecuado era la iniciación de una acción independiente para retraer estas tres participaciones o la presentación de una demanda suplementaria, según provisto por la Regla 13.4

---

(¹) Aun cuando esta alegación es esencial, en *Noble* v. *Rodríguez*, 69 D.P.R. 482 (1949) resolvimos que el hecho de que una demanda de retracto de comuneros sea defectuosa por omitir la misma, no impide que el retrayente pueda enmendarla para adicionarle esa alegación, debiendo en tal caso la demanda enmendada retrotraerse a la fecha de la demanda original. De todas formas, de haber sido necesario contraer el compromiso, la alegación se formuló en la demanda enmendada de 16 de julio.

de las de Procedimiento Civil de 1958,([2]) dentro de las circunstancias de este caso, no podemos convenir en que debamos negar la justicia que pretende el actor, cuando su moción de consignación de 5 de mayo puede considerarse como la gestión inicial para el reconocimiento del derecho a retraer que como coheredero le reconoce la ley. En este sentido, la acción fue interpuesta desde esa fecha, o sea dentro del término de treinta días. La demanda enmendada no surtió más efecto que el de un refinamiento procesal, con alegaciones más precisas, pero es indudable que el demandado estaba suficientemente advertido de las intenciones del demandante desde que se radicó la moción de consignación y se puso a su disposición el importe del precio de adquisición de las participaciones hereditarias.

No se cometió el error señalado.([3])

2—Para concluir la presentación de su prueba ante el tribunal a quo la parte demandada ofreció el testimonio del testigo Edwin Feliciano, a quien se identificó como secretario del Lic. William Morales Torres, ante quien se otorgaron los distintos instrumentos públicos mediante los cuales se cedieron las participaciones que se intenta retraer. El abogado del demandante se opuso a que prestara declaración y adujo que "(a)l secretario no le es permitido declarar sobre ninguna transacción habida en la oficina del compañero William

---

([2]) La Regla 13.4 lee como sigue:

"A moción de una parte, previa notificación y sujeto a los términos que estime justos, el tribunal podrá permitirle alegaciones suplementarias *exponiendo transacciones, eventos o hechos ocurridos con posterioridad a la fecha de la alegación que se proponga suplementar*, aunque la reclamación original sea inadecuada en su exposición de la solicitud de remedio. Si el tribunal estimare conveniente que la parte adversa presente alegaciones en contrario, así lo ordenará, especificando el plazo para ello."

([3]) Para el caso de que el retracto interesado por el demandante en cuanto a la participación de su hermano Enrique no tuviere éxito, la expresión al efecto de la ausencia de error en relación con este apuntamiento no debe entenderse como que veda al demandado Ferrer su posición de que no es extraño a la comunidad hereditaria. Véase, Artículo 1412 del Código Civil, ed. 1930, 31 L.P.R.A. sec. 3922; cfr. *Zalduondo* v. *Iturregui*, 83 D.P.R. 1 (1961).

Morales." Después de una breve discusión, durante la cual se llamó la atención del juez sobre la ausencia en este caso de la relación que contempla el privilegio invocado, se sostuvo el reparo formulado. Sin embargo, se permitió que se anunciara el contenido del testimonio que el testigo se disponía a prestar. Sucintamente, su atestación se limitaría a establecer que después de la firma de la escritura mediante la cual el demandado Ferrer adquirió la cuota o participación de Enrique Lugo Ortiz "—digamos como a los siete u ocho días del otorgamiento de la escritura—" el demandante le preguntó si se había formalizado la compraventa aludida y que el testigo le respondió en sentido afirmativo.

La importancia de esta declaración es evidente, pues si le merece crédito al juzgador, establecería fuera de toda duda la defensa de prescripción invocada por el recurrente, y derrotaría la acción incoada en cuanto se refiere al retracto de esta participación. Según puede apreciarse, un simple cálculo sobre el tiempo transcurrido entre el primer conocimiento que tuvo el actor sobre la venta, y que el testimonio lo sitúa entre los días 20 y 21 de noviembre de 1957, y la fecha de la iniciación del pleito, sobrepasaría el término de treinta días. (⁴) ▮

El artículo 40 de la vigente Ley de Evidencia, 32 L.P.R.A. sec. 1734, (⁵) dispone en su inciso 2, que:

"1. . . . . . . . .

2. Un abogado no podrá, sin el consentimiento de su cliente, ser examinado con referencia a ninguna comunicación hecha por

(⁴) Presumiendo, según la declaración propuesta, la fecha más favorable al demandante, o sea, el 21 de noviembre, el término expiraría el sábado 21 de diciembre, siendo el lunes 23 el próximo día hábil. Artículo 388 del Código Político, 1 L.P.R.A. sec. 72; Regla 68.1 de las de Procedimiento Civil de 1958. La acción se inició tres días después, el 26 de diciembre de 1957.

(⁵) En la Regla 205(1)(a) de las Reglas de Evidencia que en repetidas ocasiones han sido sometidas por el Tribunal Supremo a la Asamblea Legislativa se eliminó de la definición de abogado sometida por el Comité Consultivo de las Reglas de Evidencia la referencia a "los asociados, asistentes y empleados de oficina" del abogado.

éste [el cliente] a aquél [el abogado], ni al consejo que le hubiere dado respecto a la misma en el curso de su gestión profesional; ni podrá un secretario, taquígrafo, o escribiente de abogado, ser examinado, sin consentimiento de su principal,(⁶) con referencia a algún hecho cuyo conocimiento hubiere adquirido como tal empleado . . ."

Desde 1923, en *Tomás Cano & Co.* v. *Robles et al.*, 32 D.P.R. 643, 648, resolvimos que las instrucciones o comunicaciones a un notario no son privilegiadas y que "un notario se diferencia de un abogado en cuanto a esto." Véanse, *Martínez* v. *Asencio Segarra*, 35 D.P.R. 525, 527, 528 (1926); *López* v. *López*, 47 D.P.R. 837, 841 (1934); y *Calderón* v. *Cacho*, 62 D.P.R. 620, 630–631 (1943), en donde explicamos la diferencia apuntada, en las siguientes palabras:

"La admisibilidad de esa evidencia depende de que el abogado Sr. Angel Rivera Colón no hubiera sido consultado por los contratantes con respecto al efecto legal del contrato. Si ellos simplemente se concretaron a pedirle que redactase el contrato, sin solicitar de él opinión legal alguna respecto a los derechos y obligaciones que podrían surgir de la transacción, en otras palabras, si su intervención se limitó exclusivamente a actuar como un mero instrumento para poner por escrito lo que ellos dijeron haber convenido, en ese caso el Sr. Rivera Colón, en contemplación de la ley, no actuó en su carácter de abogado; y sí dentro de las circunstancias expuestas incidentalmente en el curso de la conversación las partes o una de ellas en presencia y al alcance del oído de la otra, sin protesta de ésta, le dijeron que la transacción era simulada, en ese caso la comunicación no tenía el

---

(⁶) Aparentemente se trata de un error de traducción, porque el privilegio corresponde invocarlo al cliente. La versión en inglés del artículo 1881 del Código de Enjuiciamiento Civil de California lee: "An attorney can not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional *employment;* nor can an attorney's secretary, stenographer, or clerk be examined, without the consent of his *employer*, concerning any fact the knowledge of which has been acquired in such capacity." Véanse, *Attorney-Client Privilege in California*, 10 Stan. L. Rev. 297 (1958), especialmente el escolio 17, a la página 300; Coward, *Privileged Communications*, 2 Hast. L. J. 31 (1951).

carácter de privilegiada y por lo tanto era admisible. Por el contrario, si el abogado fue consultado sobre el efecto legal del contrato que iba a redactar, es decir, sobre los derechos y obligaciones de las partes como arrendador y arrendatario respectivamente, etc., y en el curso de esa consulta se le comunicó que el contrato era simulado, entonces la comunicación, a menos que la simulación se hiciera con propósitos fraudulentos, constituía una comunicación privilegiada y como tal era inadmisible en evidencia sin el consentimiento del demandado."

Los estatutos que protegen las comunicaciones privilegiadas entre abogado y cliente tienen por objeto fundamental fomentar la relación de confianza entre ambos, propiciándose así que el cliente haga un recuento fiel y exacto de los hechos cuando requiere consejo legal. Cuando esta relación es completa existe la probabilidad de desalentar los litigios carentes de méritos y estériles en cuanto a sus resultados. Frente a esta política pública de evitar pleitos innecesarios se encuentra otro valor social digno de similar protección, cual es la necesidad de que ante el juzgador se presenten todos los hechos pertinentes que conduzcan a ayudarle a formar un juicio ponderando todos los elementos de prueba disponible. Es por eso que es restrictiva la interpretación de los preceptos que consagran el carácter privilegiado de estas comunicaciones, y que la prueba debe admitirse a menos que esté claramente comprendida dentro de la exclusión del estatuto. *People* v. *Donovan*, 369 P.2d 1 (Cal. 1962); *Greyhound Corporation* v. *Superior Court*, 364 P.2d 266 (Cal. 1961); *In re Richardson*, 157 A. 2d 695 (N.J. 1960). De ahí que generalmente se permita la prueba sobre las manifestaciones o comunicaciones privilegiadas cuando se trae mediante el testimonio de un tercero que estaba presente o escuchó las mismas. En California, de donde procede nuestro artículo 40, véase artículo 1881 del Código de Enjuiciamiento Civil de California, se ha expresado que el estatuto extiende el privilegio del cliente para excluir el examen del secretario, taquígrafo o

asistente del abogado sobre información adquirida en relación con comunicaciones entre abogado y cliente para evitar que se aplique la regla general indicada que permite la prueba cuando se produce a través del testimonio de terceros. *City & County of San Francisco* v. *Superior Court*, 231 P.2d 26, 30 (Cal. 1951). ■

De los hechos expuestos anteriormente aparece con toda claridad que el demandante no podía invocar la cuestión de comunicaciones privilegiadas para impedir la admisión en evidencia del testimonio de Edwin Feliciano porque: 1) entre el actor y el Lic. William Morales no existía la relación de abogado y cliente; 2) dicho abogado actuó exclusivamente en su función de dar fe pública de un documento; y, 3) no se trataba de divulgar comunicaciones o manifestaciones hechas, sino más bien de revelar un hecho que si se quiere podía ser de conocimiento general porque ya se tenía que haber informado en los índices que semanalmente el notario viene obligado a remitir a la secretaría del Tribunal Superior. En suma, que la objeción era claramente improcedente. ■

Como explicáramos anteriormente, este asunto reviste una importancia decisiva en la disposición final del litigio, y, por consiguiente, la exclusión de esta prueba constituyó un error gravemente perjudicial.

*Se revocará la sentencia dictada por el Tribunal Superior, Sala de Ponce, en 2 de marzo de 1960, y se devolverá el caso a los fines de la celebración de un nuevo juicio en cuanto se refiere a la acción de retracto únicamente.*(⁷)

---

(⁷) Esta revocación no altera la sentencia dictada por el tribunal de instancia en cuanto a causas de acción sobre cumplimiento específico de contrato y daños y perjuicios que se acumularon originalmente a la acción de retracto.