Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>    Recurrido<br><br>            v.<br><br>Waldemar Fernández Rodríguez<br><br>    Peticionario | Certiorari<br><br>2011 TSPR 188<br><br>183 DPR ____ |

Número del Caso:   CC-2009-622

Fecha: 9 de diciembre de 2011

Tribunal de Apelaciones:

                Región Judicial de San Juan, Panel III

Jueza Ponente:      Hon. Zadette Bajandas Vélez

Abogados de la Parte Peticionaria:

                Lcdo. Carlos Ramos Pantoja
                Lcda. Carmen Dolores Ruiz López
                Lcdo. René Muñoz del Castillo

Oficina de la Procuradora General:

                Lcda. Zaira Z. Girón Anadón
                Subprocuradora General

Materia: Art. 106 CP, Art. 5.04 LA y Art. 5.15 LA

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico
          Recurrido

          v.

Waldemar Fernández Rodríguez
          Peticionario

Certiorari

CC-2009-0622

Opinión del Tribunal emitida por el Juez Asociado señor Rivera García.

En San Juan, Puerto Rico, a 9 de diciembre de 2011.

Este recurso nos presenta la oportunidad de examinar la imbricación inexorable del privilegio abogado-cliente con el deber ético de confidencialidad que todo abogado le debe a sus clientes y el derecho constitucional a no autoincriminarse que posee toda persona imputada de delito. En específico, debemos resolver si determinada información que vincula al peticionario con conducta delictiva -ofrecida a un agente del orden público por su abogado- constituye materia privilegiada inadmisible en evidencia; o, por el contrario, si dicha información es admisible por razón de una renuncia al privilegio y al derecho a no incriminarse. Veamos.

I

El caso que nos ocupa tiene su génesis en un doble asesinato ocurrido el 1 de noviembre de 2006, en el Barrio Venezuela de Río Piedras. Se desprende del legajo, que en horas de la tarde de ese día Waldemar Fernández Rodríguez acudió al Cuartel General de la Policía (en adelante, Cuartel General) en compañía de su abogado, Lcdo. Luis Carbone, y de su amigo, también abogado, el Lcdo. Ovidio Zayas. Una vez en el Cuartel General, el señor Fernández Rodríguez, el licenciado Carbone y el licenciado Zayas fueron entrevistados por el Sargento José Curbelo Muñiz, adscrito a la División de Homicidios. Véase, Apéndice de *certiorari*, pág. 15.

A preguntas del sargento Curbelo el licenciado Carbone expresó que en ese momento su cliente no emitiría declaración alguna sobre los hechos, pero que posteriormente sí lo haría. Consecuentemente, el sargento Curbelo le leyó las advertencias de ley al señor Fernández Rodríguez y éste las firmó en presencia de su abogado. Luego, el señor Fernández Rodríguez fue puesto en una celda bajo la custodia de otros agentes. Acto seguido, el sargento Curbelo se reunió aparte y a solas con el licenciado Carbone para indagar sobre el arma con que alegadamente se habían cometido los asesinatos. Véase, Apéndice de *certiorari*, págs. 15-16.

A raíz de la investigación de los hechos, se presentaron sendas denuncias contra el peticionario. El 3

de enero de 2007 se celebró la vista al amparo de la Regla 6 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. El peticionario estuvo representado por varios abogados, entre ellos el licenciado Carbone. Éstos no objetaron el testimonio en cuestión del sargento Curbelo. Escuchada la prueba, se determinó causa probable para arresto contra el señor Fernández Rodríguez. La vista preliminar fue señalada para el 17 de enero de 2007. Véase, Apéndice de *certiorari*, pág. 145.

Luego de varias suspensiones, la vista preliminar comenzó el 25 de mayo de 2007, y se extendió por varios meses. Ese día las partes estipularon la siguiente prueba: (1) el informe de balística; (2) la prueba de ADN; (3) el análisis forense de la ropa incautada al señor Fernández Rodríguez; (4) servilletas y marcas de sangre de uno de los occisos; y (5) el registro del arma de fuego y la licencia de tiro al blanco del señor Fernández Rodríguez. Véase, Apéndice de *certiorari*, págs. 146-147.

Posteriormente, en la continuación de la vista preliminar los días 25 y 29 de octubre de 2007, el Ministerio Público presentó como parte del desfile de prueba siete testigos, entre los que figuró el sargento Curbelo. Éste declaró que el día 1 de noviembre de 2006, como a las 5:00 p.m., escuchó por radio que hubo una muerte violenta en la barriada Venezuela de Río Piedras, por lo que se personó al lugar. Estando en la escena, fue instruido para que acudiera al Cuartel General debido a

que allí se encontraba una persona relacionada a los hechos acaecidos acompañado de dos abogados. El testigo añadió que en el Cuartel General entrevistó al licenciado Carbone y que éste le indicó que representaba al señor Fernández Rodríguez. Específicamente, señaló que el licenciado Carbone le expresó que el señor Fernández Rodríguez no haría declaración alguna en ese momento ya que estaba muy nervioso y que posteriormente ofrecería una declaración completa de los hechos ocurridos. Véase, Transcripción de Vista Preliminar de 25 y 29 de octubre de 2007, págs. 6-9.

El sargento Curbelo declaró, además, que con posterioridad a que el licenciado Carbone le informara que su cliente guardaba relación con los hechos ocurridos en la barriada Venezuela, ellos tres (el señor Fernández Rodríguez, el licenciado Carbone y él) se ubicaron en una oficina del cuartel para hacerle las advertencias de ley al imputado. Así, señaló que el señor Fernández Rodríguez leyó las advertencias de rigor y las firmó en presencia de su abogado. Continuó narrando que el señor Fernández Rodríguez fue puesto bajo la custodia de otro agente en un lugar distinto a la oficina donde se encontraban, por lo que procedió a entrevistar a solas al licenciado Carbone. Véase, Transcripción de Vista Preliminar de 25 y 29 de octubre de 2007, págs. 46-47 y 49.

Así las cosas, el sargento Curbelo declaró que durante la entrevista el licenciado Carbone manifestó que

su cliente estaba siendo extorsionado por los occisos desde hacía un tiempo. De inmediato, el sargento Curbelo le inquirió al licenciado Carbone sobre la localización del arma de fuego utilizada para cometer los asesinatos, a lo que éste contestó que estaba tirada en una jardinera de una casa aledaña al área de los hechos. Con esa información, el sargento Curbelo procedió a llamar a la agente Daliza Ortiz Claudio, quien se encontraba en la escena del crimen. Una vez estableció comunicación con la agente, el sargento Curbelo le pasó el teléfono al licenciado Carbone para que éste le explicara a la agente Ortiz Claudio los detalles sobre la ubicación exacta del arma. Al no poder localizar el cargador ni las municiones, pero sí el arma de fuego, la agente Ortiz Claudio llamó de vuelta al sargento Curbelo para explicarle lo sucedido. Así, el sargento Curbelo la comunicó nuevamente con el licenciado Carbone y éste le indicó a la agente dónde estaban el cargador y las municiones. Véase, Transcripción de Vista Preliminar de 25 y 29 de octubre de 2007, págs. 12-14.

En su contrainterrogatorio, el sargento Curbelo reconoció que la información abogado-cliente es de naturaleza privilegiada. De igual forma, a preguntas de la defensa, indicó que una vez le hizo las advertencias de ley al señor Fernández Rodríguez no le preguntó si iba a emitir una declaración ya que el licenciado Carbone le había dicho expresamente que su cliente no iba a hacer

manifestación alguna porque se encontraba muy nervioso. Asimismo, el testigo añadió que a su entender el señor Fernández Rodríguez no había hecho renuncia alguna a su privilegio abogado-cliente, como tampoco autorizó al licenciado Carbone a que declarara por él. Véase, Transcripción de Vista Preliminar de 29 de octubre de 2007 y 7 de mayo de 2008, págs. 47-52. Finalmente, durante su contrainterrogatorio, el sargento Curbelo admitió que no le preguntó al señor Fernández Rodríguez si renunciaba a sus derechos constitucionales y que éste no había autorizado al licenciado Carbone a divulgarle información privilegiada. Íd.

En consecuencia, el señor Fernández Rodríguez solicitó que se suprimiera el testimonio del sargento Curbelo, así como la evidencia ocupada. En apoyo de su petitorio, el imputado adujo que el testimonio del sargento Curbelo era inadmisible debido a que era producto de una declaración confidencial que él le hizo a su abogado, que esta declaración era de naturaleza privilegiada y que estaba cobijada por el privilegio abogado-cliente. También alegó, que el arma y las municiones ocupadas constituían frutos del árbol ponzoñoso pues su descubrimiento fue producto directo de una conversación privilegiada. Véase, Apéndice de *certiorari*, pág. 146.

Luego de diversos trámites procesales, en febrero de 2008, el Tribunal de Primera Instancia emitió una

resolución mediante la cual descalificó al licenciado Carbone como abogado del señor Fernández Rodríguez y lo citó para que compareciera como testigo a la vista de supresión de evidencia. Además, el foro primario citó como testigo al licenciado Zayas, quien estuvo presente en ciertas conversaciones entre el licenciado Carbone y el imputado Fernández Rodríguez. Todo ello en aras de escudriñar adecuadamente la solicitud de supresión del testimonio del sargento Curbelo. Íd. Véase, además, Transcripción de Vistas de 29 de octubre 2007 y 7 de mayo de 2008, págs. 106-108.

Así, pues, el 7 de mayo de 2008 el Tribunal de Primera Instancia celebró una vista de supresión de evidencia en la que testificaron el licenciado Carbone y el licenciado Zayas, entre otros. En esencia, el licenciado Carbone negó haber informado al sargento Curbelo sobre la localización del arma, cargador y municiones debido a que no estuvo en el lugar de los hechos y desconocía totalmente esta información. Véase, Transcripción de Vistas de 29 de octubre 2007 y 7 de mayo de 2008, págs. 106-108. Véase, además, Apéndice de *certiorari*, pág. 146. Por su parte, el licenciado Zayas testificó, en lo pertinente, que el 1 de noviembre de 2006 acompañó al señor Fernández Rodríguez al Cuartel General en calidad de amigo y no como su abogado. Véase, Apéndice de *certiorari*, págs. 146-147.

Culminada la vista de supresión de evidencia, el 9 de mayo de 2008 el Tribunal de Primera Instancia dictó dos resoluciones. En la primera de ellas, el foro primario declaró *no ha lugar* la moción de supresión de evidencia presentada por el señor Fernández Rodríguez. En el referido dictamen, el tribunal de instancia señaló que no le confirió credibilidad al testimonio del licenciado Carbone ni al del licenciado Zayas porque habían omitido hechos importantes y fueron inconsistentes sus declaraciones. Véase, Apéndice de *certiorari*, pág. 147.

Cónsono con lo anterior, el tribunal primario sostuvo que no se había violado el privilegio abogado-cliente del señor Fernández Rodríguez. Ello, debido a que su intención siempre fue acudir al Cuartel General para entregarse. A esos efectos, añadió que Fernández Rodríguez compareció acompañado y asesorado por su abogado, el licenciado Carbone; se presentó con la intención de hacer unas declaraciones sobre un doble asesinato que había ocurrido esa misma tarde; y estuvo presente cuando su abogado divulgó la razón para su comparecencia. Véase, Apéndice de *certiorari*, págs. 65, 146-147.

De otra parte, en la segunda resolución, el Tribunal de Primera Instancia determinó causa probable para acusar por dos cargos de asesinato, dos cargos bajo el Artículo 5.15 y un cargo por infracción al Artículo 5.04 de la Ley Núm. 404 de 11 de septiembre de 2000, según enmendada,

conocida como Ley de Armas de Puerto Rico. Véase, Apéndice de *certiorari*, pág. 65.

Subsiguientemente, el 16 de mayo de 2008 el Pueblo presentó las acusaciones según autorizadas contra el señor Fernández Rodríguez. El 9 de junio del mismo año, el imputado presentó una *Moción de Desestimación* al amparo de la Regla 64(p) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R.64(p). En su escrito adujo que la determinación de causa probable para acusar fue contraria a derecho debido a que la prueba presentada en la vista preliminar era inadmisible e ilegal por ser producto de información privilegiada, la cual fue confiada por el imputado a su representante legal. Además, señaló que la única prueba que lo ataba a los hechos era el testimonio del sargento Curbelo y, siendo el mismo inadmisible, la determinación de causa probable era contraria a derecho. Oportunamente, el 7 de agosto de 2008 la Fiscalía presentó su oposición al petitorio de desestimación presentada por el imputado. Véase, Apéndice de *certiorari*, págs. 65-69.

Luego de varias incidencias procesales, el 29 de diciembre de 2008 el foro primario emitió una resolución en la que denegó la solicitud de desestimación del imputado. En su dictamen puntualizó que aunque el señor Fernández Rodríguez no renunció a su privilegio abogado-cliente, el testimonio del sargento Curbelo era admisible. Ello, debido a que el sargento Curbelo actuó conforme a la doctrina de "autoridad aparente". Es decir,

el sargento Curbelo estaba convencido de que el licenciado Carbone estaba autorizado a divulgar [la] información que divulgó. Ciertamente aparentaba tenerla. Las propias actuaciones del licenciado Carbone son las que dan base "a la buena fe de los agentes de la policía y permite llegar a una creencia o conclusión razonable de que la persona que representa tener la autoridad… la tiene". Véase, Apéndice de *certiorari*, págs. 76-86.

Inconforme, el 28 de enero de 2009 el imputado presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. El Ministerio Público, por su parte, se opuso oportunamente. Estudiados los argumentos de las partes, el 22 de mayo de 2009 el Tribunal de Apelaciones dictó una sentencia y confirmó la resolución recurrida. Sostuvo que la determinación de causa probable para acusar fue conforme a derecho toda vez que el peticionario renunció tácitamente al privilegio abogado-cliente. Ello, pues la prueba desfilada reveló que su intención siempre fue acudir al Cuartel General para entregarse. Véase, Apéndice de *certiorari*, pág. 172.

Además, el foro apelativo intermedio señaló que el peticionario no objetó oportunamente el testimonio del sargento Curbelo durante la vista de causa probable para arresto. Por esta razón, dicho foro coligió que era innecesario que el Tribunal de Primera Instancia aplicara por analogía la doctrina de "autoridad aparente". Íd.[1]

Nuevamente insatisfecho, el 21 de julio de 2009 el imputado presentó una petición de *certiorari* ante este

---

[1] Sobre esta determinación, el imputado presentó una solicitud de reconsideración, la cual fue denegada mediante resolución emitida el 16 de junio de 2009. Véase, Apéndice de *certiorari*, pág. 181.

Tribunal. En ella señaló la comisión de los siguientes errores:

> Erró el Tribunal de Apelaciones al confirmar la resolución del Tribunal de Primera Instancia denegando la moción de desestimación presentada por el peticionario bajo las disposiciones de la Regla 64(p) de Procedimiento Criminal a pesar de que la determinación de causa probable fue contraria a derecho ya que la misma se basó en prueba que legalmente no era admisible.

> Es errada la decisión del foro apelativo intermedio a los efectos de que medió una renuncia implícita al privilegio abogado-cliente porque: el peticionario había comparecido voluntariamente al Cuartel General de la Policía en relación a una investigación de unos hechos delictivos; la información ofrecida por el abogado que lo representó en ese momento no fue compelido a ofrecer la información en relación a dónde se encontraba el arma de fuego sino que brindó voluntariamente y sin coacción tal información; y no invocó oportunamente dicho privilegio en el procedimiento judicial seguido en su contra.

Con el beneficio de la comparecencia de las partes y sus respectivos alegatos, procedemos a resolver.

## II

Como es sabido, los privilegios surgen de la Constitución, de la ley, de las Reglas de Evidencia o de las leyes especiales. La Constitución, por un lado, puede crear privilegios, como lo es el que se deriva del derecho contra la autoincriminación. Por otro lado, la Constitución puede limitar -y hasta suprimir- el alcance de un privilegio cuando su aplicación está reñida con un derecho fundamental. E.L. Chiesa Aponte, <u>Tratado de Derecho Probatorio</u>, Publicaciones JTS, Tomo I, 2005, págs. 169-170.

Los privilegios evidenciarios buscan adelantar valores e intereses sociales que por consideraciones de política pública se estiman superiores a la búsqueda de la verdad. Chiesa Aponte, Tratado de Derecho Probatorio, supra, pág. 169. El fundamento tradicional es el utilitarismo. Es decir, "se estima que el sacrificio de evidencia con claro valor probatorio se justifica para adelantar un alto interés público…. Mientras más alto sea el interés público que se quiere adelantar con el privilegio, mayor será su alcance y menor las excepciones al privilegio". E.L. Chiesa Aponte, Reglas de Evidencia de Puerto Rico 2009, Publicaciones JTS, 2009, pág. 149. Véase, además, R. Emmanuelli, Prontuario de Derecho Probatorio de Puerto Rico, Editorial Corripio, 1ra ed., 1984, pág. 214.

En ese contexto, todo proceso judicial, particularmente el criminal, tiene el fin esencial de descubrir la verdad de lo acontecido, razón por la cual no debe exceptuarse o excluirse la debida exposición de los hechos pertinentes, salvo que exista un interés superior o de mayor jerarquía para la sociedad o para la persona que se interponga a ese fin. Pueblo v. De Jesús Delgado, 155 D.P.R. 930 (2001). Dicho de otro modo, los privilegios, por su naturaleza y función, impiden el descubrimiento de ciertos actos, hechos o comunicaciones por existir intereses en conflicto que intervienen con esa búsqueda exhaustiva de la verdad. Es por ello que los privilegios,

contenidos en las Reglas de Evidencia, se interpretan restrictivamente. De ahí que el fundamento de los privilegios sea totalmente independiente de la búsqueda de la verdad. Es decir, se excluye materia privilegiada por razones y consideraciones de política pública, para adelantar valores o intereses sociales ajenos o antagónicos a la búsqueda de la verdad, tan fundamental para la más justa adjudicación de las controversias judiciales. Ortiz García v. Meléndez Lugo, 164 D.P.R. 16 (2005).

## A. El Privilegio Abogado-Cliente

Al momento de los hechos delictivos ante nuestra consideración, la Regla 25 de las derogadas Reglas de Evidencia de Puerto Rico de 1979, 32 L.P.R.A. Ap. IV, R. 25 (2008), encarnaba el privilegio abogado-cliente de la siguiente manera:

> (A) Según usadas en esta regla, las siguientes expresiones tendrán el significado que a continuación se indica:

> (1) Abogado: Persona autorizada o a quien el cliente razonablemente creyó autorizada a ejercer la profesión de abogado; incluye a la persona así autorizada y a sus asociados, asistentes y empleados de oficina.

> (2) Cliente: Persona natural o jurídica que, directamente o a través de representante autorizado, consulta a un abogado con el propósito de contratarle o de obtener servicios legales o consejo en su capacidad profesional; incluye al incapaz que consulta él mismo a un abogado o cuyo tutor o encargado hace tal gestión con el abogado a nombre del incapaz.

(3) Comunicación Confidencial: Aquella comunicación habida entre un abogado y su cliente en relación a alguna gestión profesional, basada en la confianza de que no será divulgada a terceras personas, salvo a aquellas personas que sea necesario para llevar a efecto los propósitos de la comunicación.

(B) Sujeto a lo dispuesto en esta regla, el cliente, sea o no parte en el pleito o acción, tiene el privilegio de rehusar revelar, y de impedir que otro revele, una comunicación confidencial entre él y su abogado. El privilegio puede ser invocado no sólo por el poseedor del privilegio que es el cliente, sino también por una persona autorizada a invocarlo en beneficio de éste, o por el abogado a quien la comunicación fue hecha si lo invoca a nombre de y para el beneficio del cliente.[2]

---

[2] En la actualidad, nuestro ordenamiento jurídico-probatorio encarna el privilegio abogado-cliente en la Regla 503 de Evidencia, 32 L.P.R.A. Ap. VI, R.503. Ésta dispone, en lo pertinente, lo siguiente:

  (a) "Según usadas en esta Regla, las siguientes expresiones tendrán el significado que a continuación se indica:

    (1) Abogado: Persona autorizada o a quien el cliente razonablemente creyó autorizado a ejercer la profesión de la abogacía en Puerto Rico o en cualquier otra jurisdicción; incluyendo a sus asociadas, ayudantes y empleadas.

    (2) Cliente: Persona natural o jurídica que, directamente o a través de representante autorizado, consulta a un abogado con el propósito de contratarle o de obtener servicios legales o consejo en su capacidad profesional. Incluye a la persona incapaz que consulta a un abogado o cuyo tutor o encargado hace tal gestión con el abogado a nombre de la persona incapaz.

    (3) Representante autorizado: Persona facultada para obtener servicios legales o actuar a base de consejo legal ofrecido, en representación del que es cliente. Incluye a una persona que, con el propósito de que se brinde representación legal a quien es cliente, hace o recibe una comunicación confidencial mientras actúa dentro del alcance de su empleo con el cliente.

    (4) Comunicación confidencial: Aquella habida entre un abogado y su cliente en relación con alguna gestión profesional, basada en la confianza de que no será divulgada a terceras personas, salvo aquellas que sea necesario para llevar a

El privilegio abogado-cliente es el más antiguo de los privilegios que emanan del derecho común. Autopistas P.R. v. A.C.T., 167 D.P.R. 361 (2006). En Inglaterra, éste se reconoció aproximadamente en el año 1577, durante los tiempos de la Reina Isabel I, en el caso de Berd v. Lovelace, 21 Eng. Rep. 33. No obstante, sus orígenes se remontan al Derecho Romano y luego al Derecho Canónico. Bajo la doctrina original, este privilegio le pertenecía al abogado, no al cliente, ya que su fin no era más que preservar el honor del abogado por no tener que revelar los secretos confiados por el cliente. Weinstein's Federal Evidence, 2da ed., Lexis Nexis, Vol. 3, Sec. 503.03 (1), 2011, págs. 503-511.

Desde su génesis, el privilegio abogado-cliente ha protegido el vínculo de confianza de esta relación fiduciaria ya que revelar las confidencias del cliente constituye, no sólo un acto de traición, sino que viola el deber de lealtad del abogado. Mueller, Christopher y Kirkpatrick, Laird, Federal Evidence, Thompson/West, 2007,

efecto los propósitos de la comunicación.

(b) Sujeto a lo dispuesto en esta Regla, el cliente -sea o no parte en el pleito o acción- tiene el privilegio de rehusar revelar, y de impedir que otra persona revele, una comunicación confidencial entre ella y su abogado. El privilegio puede ser invocado no solo por quien lo posee -que es la persona cliente- sino también por una persona autorizada a invocarlo en beneficio de ésta, o por el abogado a quien la comunicación fue hecha si lo invoca a nombre de y para beneficio del que es cliente".

Como bien se deduce del texto citado, la nueva Regla 503 de Evidencia de 2009 comparte un lenguaje *similar* en naturaleza a aquel esbozado por la derogada Regla 25 de las Reglas de Evidencia de 1979, *supra*. Con excepción de la definición del término *Representante Autorizado*, al igual que otros cambios menores, podemos interpretar ambas reglas de igual forma.

Vol. 2, Sec. 5:13, pág. 519. Véanse, además, 4 L.P.R.A. Ap. IX, C.21; In re: Rochet Santoro, 174 D.P.R. 123 (2008); In re: Monge García, 173 D.P.R. 379 (2008).

En la actualidad, los privilegios tienen un poseedor; esto es, una persona a favor de la cual se crea el privilegio. Ese titular es el que tiene el derecho a invocar el privilegio y de objetar la evidencia que se presenta en violación al mismo. En la relación abogado-cliente el titular del privilegio lo es el cliente. McCormick on Evidence, West Publishing Corp., ed. 2006, Sec. 73.1(a), págs. 342-344.

Así, no sólo son privilegiadas las comunicaciones del cliente al abogado, sino también las hechas del abogado al cliente en el curso del asesoramiento legal. En fin, el privilegio se extiende en ambas direcciones. Chiesa Aponte, Reglas de Evidencia de Puerto Rico 2009, supra, pág. 151.

De igual forma, "es suficiente con que el cliente razonablemente crea que con quien habla es un abogado, aunque en realidad no lo sea. Si una persona se hace pasar por abogado, sin realmente serlo, y el cliente razonablemente cree que la persona es abogado, las comunicaciones confidenciales son privilegiadas". Íd. Para que el privilegio opere, no es necesario que el abogado esté admitido al ejercicio de la abogacía en Puerto Rico, sino basta con que esté admitido en alguno de

los Estados de los Estados Unidos. Íd. Véase, además, Autopistas P.R. v. A.C.T., supra.

Acorde con lo expresado, el privilegio abogado-cliente puede ser invocado, no sólo por quien lo posee -el cliente-, sino también por una persona autorizada a invocarlo en beneficio de ésta, o por el abogado a quien la comunicación fue hecha si lo invoca a nombre de y para beneficio del cliente. Se reconoce que el privilegio puede ser planteado por el abogado en beneficio del cliente, hasta tanto se demuestre que el abogado no está autorizado para actuar en tal carácter. Weinstein, op cit., Sec. 503-20 (3), pág. 503.

Además, el privilegio abogado-cliente impide al abogado divulgar una comunicación confidencial que le hizo su cliente, y si el abogado le divulga a un tercero la comunicación confidencial, el tercero no podrá testificar sobre ella ante objeción del cliente (poseedor del privilegio) o su representante. No obstante, el abogado sí puede testificar sobre una conversación con una persona que no es su cliente, en cuyo caso no hay comunicación privilegiada alguna protegida por el privilegio. En otras palabras, las manifestaciones que a un abogado haga una persona que no es su cliente, no son privilegiadas, pudiendo dicho abogado declarar en cuanto a las mismas. Pueblo v. Rodríguez, 66 D.P.R. 317 (1946).

En ese sentido, para que un tribunal reconozca la existencia de una comunicación privilegiada es necesario

que concurran cuatro condiciones fundamentales, a saber: (1) la comunicación tiene que haberse originado en la confianza de que no será divulgada; (2) este elemento de confiabilidad tiene que ser esencial para mantener plena y satisfactoriamente la relación entre las partes; (3) la relación debe ser una que la comunidad considere debe ser diligentemente promovida; y (4) el perjuicio que causaría la divulgación de la comunicación debe ser mayor que el beneficio obtenido por la correcta disposición del pleito. García Negrón v. Tribunal Superior, 104 D.P.R.727, 732 (1976).

Sin embargo, bajo el apartado (C) de la derogada Regla 25 de Evidencia, *supra*, nuestro ordenamiento probatorio establece que no existe privilegio abogado-cliente si:

> (1) Los servicios del abogado fueron solicitados u obtenidos para permitir o ayudar a cualquier persona a cometer o planear la comisión de un delito, un acto torticero o un fraude.
> (2) La comunicación es pertinente a una controversia entre los herederos del cliente ya fallecido, independientemente de que las reclamaciones provengan de un testamento o de sucesión intestada o de transacción entre vivos.
> (3) La comunicación es pertinente a una controversia relativa a una violación por el abogado del cliente de un deber que surja de la relación abogado-cliente.
> (4) La comunicación es pertinente a una controversia relativa a un documento en que intervino el abogado en calidad de notario.
> (5) La comunicación es pertinente a una materia de común interés para dos o más clientes del abogado, en cuyo caso un cliente no puede invocar el privilegio contra los otros dos.[3]

---

[3] Luego de la vigencia de las nuevas Reglas de Evidencia de 2009, las excepciones al privilegio abogado-cliente se encuentran contempladas en la Regla 503 (C), *supra*.

## B. Renuncia de los Privilegios

Todos los privilegios, incluyendo los de rango constitucional son renunciables. Chiesa Aponte, _Tratado de Derecho Probatorio_, supra, págs. 173-174. Como norma general, éstos tienen que ser renunciados de forma voluntaria, consciente e inteligente. _Moran v. Burbine_, 475 U.S. 412 (1986). _Pueblo en interés del menor J.A.B.C._, 123 D.P.R. 551 (1989); _Pueblo v. López Rodríguez_, 118 D.P.R. 515 (1987). Una renuncia será voluntaria si es "realizada sin que haya mediado intimidación, coacción o violencia por parte de los funcionarios del Estado en el procedimiento que culmina en la toma de la confesión". _Pueblo v. Ruiz Bosch_, 127 D.P.R. 762, 775-776 (1991); _Pueblo en interés del menor J.A.B.C._, supra, pág. 561. Es decir, para que se entienda renunciado un privilegio su dueño o poseedor, debe ser advertido o informado por las autoridades pertinentes, de su derecho al privilegio y de la existencia del mismo.

Las Reglas 33 y 34 de las Reglas de Evidencia de 1979, recogían estatutariamente los principios esbozados. Así, la Regla 33 disponía lo siguiente:

> Una persona que de otro modo tendría el privilegio de no divulgar un asunto o materia específico, o de impedir que otra persona los divulgue, no tiene tal privilegio respecto a dicho asunto o materia si el tribunal determina que esa persona, o cualquiera otra mientras era la poseedora del privilegio, se obligó con otro a no invocar el privilegio, o que sin haber sido coaccionada y con conocimiento del privilegio, divulgó cualquier parte del asunto o materia, o permitió tal divulgación por otra persona. Esta regla no se aplicara a los privilegios

[constitucionalmente reconocidos al acusado, al igual que el privilegio en contra de la autoincriminación.]⁴ 32 L.P.R.A. Ap. IV, R. 33 (2008)

---

[4] Hoy día, la renuncia al privilegio abogado-cliente está reglamentado en las Reglas 505 y 515 de Evidencia de 2009, *supra*. La Regla 505 de Evidencia, 32 L.P.R.A. Ap. VI, reza como sigue:

(A)  Aplicabilidad de esta Regla

Las disposiciones de esta Regla aplican a comunicaciones o información protegida por el privilegio abogada o abogado-cliente, contadora o contador público autorizado-cliente o por el privilegio para el producto del trabajo, según se definen dichos términos a continuación:

(1)  Privilegio abogada o abogado-cliente o contadora o contador público autorizado-cliente: Significa la protección provista a comunicaciones confidenciales entre abogada o abogado y cliente o contadora o contador público autorizado y cliente de conformidad con el Derecho aplicable.

(2)  Privilegio para el producto del trabajo: Significa la protección provista a información que es el producto del trabajo de una parte o de la persona que es abogada, consultora, fiadora, aseguradora o agente de dicha parte, preparada u obtenida en anticipación de, o como parte de una investigación o procedimiento civil, administrativo o penal.

(B)  Renuncia Voluntaria

La divulgación voluntaria de una información protegida por el privilegio abogada o abogado-cliente, contadora o contador público autorizado-cliente o el privilegio para el producto del trabajo constituye una renuncia a estos privilegios, la cual no se extiende a una comunicación no divulgada o a información sobre la misma materia. Esta Regla no aplica si la comunicación no divulgada o los datos en cuestión deben ser considerados para la más cabal comprensión de la información divulgada.

(C)  Renuncia involuntaria

La divulgación de una comunicación o información protegida por el privilegio abogada o abogado-cliente, contadora o contador público autorizado-cliente o el privilegio para el producto del trabajo, no se considerará una renuncia al privilegio si se cumple con todos los requisitos siguientes:

(1)  si fue realizada por inadvertencia,

(2)  como parte del procedimiento judicial o administrativo en el cual se invoca la renuncia,

(3)  quien posee el privilegio tomó medidas de precaución razonables para evitar la divulgación y

(4)  una vez el poseedor o la poseedora del privilegio conoció o debió conocer de la divulgación, con razonable prontitud tomó medidas para rectificar el error.

(D)  Efectos de una renuncia mediante estipulación

Un acuerdo entre las partes en un litigio en relación con el efecto que tendrá la divulgación de una información o

Por su parte, la Regla 34 proveía que un Juez

[podía] admitir una comunicación de otra manera privilegiada cuando determin[ara] que la conducta del poseedor del privilegio equival[ía] a una renuncia, independientemente de lo

---

comunicación protegida por el privilegio abogada o abogado-cliente, contadora o contador público autorizado-cliente o el privilegio para el producto del trabajo, sólo tendrá efecto vinculante entre las partes en el litigio, excepto si el acuerdo de las partes es incorporado en una orden del Tribunal.

(E)    Órdenes Judiciales

Una orden emitida como parte de un procedimiento judicial en un Tribunal del Estado Libre Asociado de Puerto Rico, y la cual dispone que el privilegio abogada o abogado-cliente, el privilegio contadora o contador público autorizado-cliente o el privilegio para el producto del trabajo no debe considerarse renunciado en virtud de una divulgación de información efectuada en dicho procedimiento judicial, obliga a todas las personas o entidades en todos los procedimientos judiciales o administrativos ante el Estado Libre Asociado de Puerto Rico, independientemente de que dichas personas o entidades hayan sido parte en el procedimiento judicial, si: (1) la orden incorpora el acuerdo de las partes ante el Tribunal ó (2) en caso de surgir controversia entre las partes respecto a si hubo una renuncia al privilegio como resultado de una divulgación, la orden determina que no hubo tal renuncia al privilegio en cuestión.

Por otro lado, la Regla 517 de Evidencia, 32 L.P.R.A. Ap.VI, dispone lo siguiente:

(a)    Renuncia expresa

Una persona, que de otro modo tendría el privilegio de no divulgar un asunto o materia específico, o de impedir que otra los divulgue, no tiene tal privilegio respecto a dicho asunto o materia si el Tribunal determina que: (1) esa persona, o cualquiera otra mientras era la poseedora del privilegio, se obligó con otra a no invocar el privilegio, o (2) que sin haber sido coaccionada y con conocimiento del privilegio, divulgó cualquier parte del asunto o materia, o permitió tal divulgación por otra persona.

(b)    Renuncia implícita

La Jueza o el Juez que preside un caso podrá admitir una comunicación de otra manera privilegiada cuando determine que la conducta de quien posee el privilegio equivale a una renuncia, independientemente de lo dispuesto en el inciso (a) de esta Regla.

(C)    Esta Regla no se aplicará a los Privilegios establecidos en las Reglas 501, 502 y 512.

dispuesto en la Regla 33[, *supra*]. 32 L.P.R.A. Ap. IV, R. 34 (2008).

## C. Interpretación Restrictiva de los Privilegios

La Regla 35 de Evidencia de 1979 proveía que los privilegios evidenciarios debían interpretarse restrictivamente "en relación a cualquier determinación sobre la existencia de un privilegio". 32 L.P.R.A. Ap. IV, R. 35 (2008).

Esta Curia ha invocado en numerosas ocasiones el concepto de la interpretación restrictiva para limitar el alcance o no permitir la aplicación de un privilegio. Pueblo en interés del menor, L.R.R., 125 D.P.R. 78 (1989); García Negrón v. Tribunal Superior, supra; Ward v. Tribunal Superior, 101 D.P.R. 865 (1974); Lugo Ortiz v. Ferrer, 85 D.P.R. 862 (1962); Pueblo v. Matos, 86 D.P.R. 335 (1961). La interpretación restrictiva del privilegio, pudiera inclinar la balanza en contra de su reconocimiento. Ahora bien, ante la ausencia de una renuncia expresa es imperativo evaluar la totalidad de las circunstancias, donde se protegen unos derechos constitucionales.

## D. Consideraciones Éticas del privilegio y relación Abogado-Cliente: sus implicaciones con el Derecho Constitucional a no autoincriminarse

La relación de abogado y cliente debe fundamentarse en la absoluta confianza. Todo miembro del foro legal le debe a sus clientes un trato profesional caracterizado por la mayor capacidad, la más devota lealtad y la más completa honradez. El abogado debe poner todo su empeño en llevar a cabo en esa forma su gestión profesional y no debe dejar de cumplir con su deber por temor a perder el favor judicial o por

miedo a perder la estimación popular. 4 L.P.R.A. Ap. IX, Art. 18.

La relación abogado-cliente es una *sui generis*. Es de naturaleza fiduciaria y está basada en la honestidad, lealtad y fidelidad absoluta. Ello responde, en gran medida, a las inexorables exigencias éticas muy particulares de la profesión legal. <u>López de Victoria v. Rodríguez</u>, 113 D.P.R. 265 (1982). Así, esta relación se fundamenta –en gran medida- en el deber de lealtad y de confidencialidad que le debe todo abogado a su cliente. 4 L.P.R.A. Ap. IX, C.21.[5] Su fin es utilitario ya que permite que una persona obtenga consejo legal con la confianza de que la comunicación se origina en un supuesto de confidencialidad y que la misma no será divulgada más allá de lo necesario para llevar a cabo sus fines. Emanuelli, <u>op cit.</u>, pág. 214. Esta obligación continúa aun después de haber cesado las relaciones del abogado y cliente. <u>In re: Guzmán</u>, 80 D.P.R. 713, 724 (1958).

En su obra, <u>Ética y Responsabilidad Disciplinaria del Abogado</u>, el Juez Sigfrido Steidel Figueroa, describe con precisión las implicaciones éticas de la relación abogado-cliente.

Al formalizar una relación profesional con un cliente, un abogado se obliga a cumplir las

---

[5] En lo pertinente, el Canon 21 de Ética Profesional reza como sigue:

"El abogado tiene para con su cliente un deber de lealtad completa. La obligación de representar a un cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste". 4 L.P.R.A. Ap. IX, C.21.

prestaciones que la relación contractual genera. También se obliga a cumplir con los deberes que el código de ética le impone, algunos de los cuales pueden concebirse como prestaciones accesorias a la prestación principal pactada. Esos deberes no son exigibles sólo frente al cliente inmediato del abogado durante el tiempo en que subsiste la relación contractual. Algunos son exigibles incluso luego de que el abogado cumple la gestión específica que el cliente le encomendó, pues no se proyectan exclusivamente en la dinámica interna entre el abogado y su representado. También tienen implicaciones frente a otros clientes, tanto simultáneos como futuros. Así, la responsabilidad ética y disciplinaria del abogado trasciende tanto el vínculo temporal de la relación contractual, al proyectarse aún después de que la relación finaliza, como la singularidad de la relación contractual con una o varias personas. En similar situación se encuentra el abogado que asume de oficio la representación legal de una persona.

...

Un cliente selecciona a un abogado como su representante por diversas razones: la reputación ganada por el abogado; una relación de amistad, de parentesco o de otra índole; accesibilidad geográfica o de costo; por recomendación; por designación de oficio del tribunal (en cuyo caso no cabe hablar propiamente de selección por parte del cliente); o por designación del bufete contratado por el cliente; entre muchas otras razones. Indistintamente, el cliente habrá de confiar en que el abogado cumplirá diligentemente la tarea que se le ha encomendado. De este modo, subyace en esa naciente relación la expectativa del cliente de que el abogado que ha seleccionado honrará la confianza que le ha depositado.

Para algunos, la relación de confianza exigible a un abogado frente a un cliente no parece muy distinta de la que debe [exigirse] en otro tipo de relación profesional, como por ejemplo, entre un médico y un paciente o entre un contador público y un cliente. No hay duda de que todas estas relaciones profesionales requieren una dosis significativa de confianza entre las partes involucradas. De hecho, toda relación contractual parte de un elemento mínimo de confianza -confianza en que se cumplirán las prestaciones según lo pactado, confianza en que

se obrará de buena fe, etcétera. Sin embargo, distinto a otras relaciones profesionales, la relación entre un abogado y un cliente con frecuencia se opone a otros intereses, de ordinario adversos, a los que el cliente mira con desconfianza. **De este modo, el contexto adversativo propio del sistema de dispensar justicia -que no está presente en la relación entre un médico y un paciente o entre un contador y un cliente- adscribe un sitial de preeminencia al deber de honrar la confianza depositada por un cliente en un abogado. "Hacer honor a la confianza constituye, así, la piedra angular de los deberes que el abogado debe cumplir en su relación con un cliente. Pero, ¿confianza en qué? Surgen entonces los deberes implícitos en aquél: absoluta lealtad, honradez, diligencia y competencia profesional.**

**El deber de lealtad hacia un cliente lleva implícito dos obligaciones principales del abogado: "ejercer un criterio profesional independiente en defensa de los intereses del cliente" y "no divulgar los secretos y confidencias que el cliente haya compartido en el transcurso de su representación. Este último deber subsiste aún después de que concluye la relación abogado-cliente.**

...

**Ínsito en el deber de lealtad, también se encuentra el deber del abogado de mantener la secretividad de las confidencias que le hace un cliente. Este deber posibilita que el abogado obtenga toda la información relevante al caso de su cliente sin que éste tema que lo [expresado] a su abogado llegue sin su consentimiento a oídos de terceros que pudieran perjudicarlo….** Steidel Figueroa, Ética y Responsabilidad Disciplinaria del Abogado, JTS, 2010, págs. 173-177. (Énfasis nuestro.)

Así pues, las obligaciones que nacen de la relación abogado-cliente pueden verse desde dos perspectivas: ético-disciplinaria y probatoria-procesal. En esencia, se trata de acercamientos a intereses jurídicamente tutelados que tienen sus propios fundamentos y que operacionalmente coinciden entre sí. Steidel Figueroa, op cit., pág. 176.

Desde la vertiente ético-disciplinaria, el abogado tiene el deber de guardar todas las confidencias que recibe de su cliente. De igual modo, desde su dimensión procesal-probatoria, "tanto el abogado como terceras personas están obligadas a respetar ese vínculo de lealtad que debe profesar un abogado hacia su cliente mediante el reconocimiento de un privilegio probatorio invocable por el cliente, incluso frente a terceros". Íd.

> **Asimismo, el deber de lealtad y secreto profesional tiene tangencia con la protección constitucional contra la autoincriminación. De ahí que se haya afirmado que el deber de secreto profesional se basa "en la necesidad de la libertad de comunicación que debe existir entre el letrado y su cliente y en la obligación de asegurarle a este último que sus confidencias no serán violadas; en este sentido, está unido a la garantía constitucional según la cual nadie está obligado a declarar contra sí mismo".** Steidel Figueroa, op cit., pág. 176 citando a M.E. Azerrad, G. Alberto Florio y M.S. Azerrad, El Secreto Profesional y el Deber de Confidencialidad, 114 (Ediciones Jurídicas Cuyo, 2003). (Énfasis nuestro.)

Precisamente, es ese deber de secreto profesional y la necesidad de que las comunicaciones habidas entre el cliente y su abogado no sean divulgadas a terceros, lo que hace que la garantía constitucional a no autoincriminarse también esté encarnada dentro de nuestro esquema probatorio. Véanse, Reglas 23 y 24 de Evidencia de 1979, 32 L.P.R.A. Ap. IV, R.23 y R.24. Ello, pues cuando un abogado divulga información confidencial sin la autorización previa de su cliente, incurre en una de las faltas éticas de mayor gravedad; particularmente en contra de los deberes de lealtad y confidencialidad que debe

honrarle a sus clientes. 4 L.P.R.A. Ap. IX, C.21. Más aún, si la información divulgada de forma no autorizada incrimina penalmente a su cliente, el abogado, aparte de incurrir en conducta impropia, viola el derecho a la no autoincriminación de su cliente. *Cf.* Nix v. Whiteside, 475 U.S. 157 (1986); In re: Clavell Ruiz, 131 D.P.R. 500 (1992).

Empero, si las circunstancias particulares del caso revelan que el cliente renunció adecuadamente a su derecho a no autoincriminarse y a su privilegio bajo la Regla 25 de Evidencia, *supra*, el abogado no habrá incurrido en conducta impropia alguna. Véanse, además, Brewer v. Williams, 430 U.S. 387 (1977) (el Tribunal Supremo federal resolvió que la renuncia de un privilegio no sólo debe ser inteligente, sino que debe demostrarse la intención de renuncia del poseedor del privilegio. En ese sentido, en relación al privilegio que emana de la Quinta Enmienda de la Constitución de los Estados Unidos, es fundamental avisarle adecuadamente al poseedor del privilegio sobre sus derechos y no limitarse a un ritual preliminar de métodos existentes de interrogación); Miranda v. Arizona, 384 U.S. 460 (1966), y su progenie.

Un ejemplo de la normativa esbozada lo es People v. Cassas, 84 N.Y. 2d 718 (1995). En síntesis, los hechos apuntan que James Cassas fue acusado y convicto por el asesinato de su esposa, Jan Cassas, al dispararle con un arma de fuego cuatro veces por detrás de la cabeza y

cuello en horas de la mañana del 25 de junio de 1987. People v. Cassas, supra, pág. 721.

A raíz de estos hechos, el señor Cassas y su abogado Samuel Hirsch, acudieron a la Estación de la Policía más cercana. Una vez allí, el licenciado Hirsch se identificó como abogado e indicó que en el hogar de su cliente había ocurrido un problema, por lo que era necesario la pronta asistencia de la policía. Ante ello, mientras el señor Cassas permaneció en el cuartel, el licenciado Hirsch acompañó a los policías a la escena del crimen y allí encontraron el cuerpo de la señora Cassas. Luego, el licenciado Hirsch regresó al cuartel donde el señor Cassas le esperaba. Íd.

Una vez en el cuartel, el abogado expresó que "había llevado a su cliente para que se entregara. `Entiendo que fue él quien le disparó a su esposa. Encontrarán el arma en el cuarto, la cual tendrá las huellas dactilares de mi cliente´". Consecuentemente, el señor Cassas fue arrestado y, más tarde en el día, se recuperó el arma de fuego justo en el lugar donde indicó el licenciado Hirsch. Íd.

Durante el proceso judicial contra el señor Cassas, el Tribunal de Primera Instancia del Estado de Nueva York denegó una moción que presentó el imputado solicitando la supresión de las declaraciones hechas por el licenciado Hirsch a la policía. El foro primario señaló que al momento de emitirse las referidas declaraciones el

licenciado Hirsch, como abogado del señor Cassas, fungía como su agente, por lo que estaba autorizado a hablar sobre la información a él confesada por el imputado producto de su relación abogado-cliente. Por lo tanto, coligió que la declaración obligaba al acusado. Íd.

El Tribunal de Apelaciones del Estado de Nueva York confirmó el dictamen recurrido. Concluyó que la declaración en controversia, la cual fue admitida mediante el testimonio de un detective, constituía prueba directa sobre la culpabilidad del señor Cassas. Íd.

Atendida la controversia por la Corte Suprema del Estado de Nueva York, ese foro revocó el dictamen del tribunal apelativo intermedio y ordenó la celebración de un nuevo juicio. Apuntaló que como norma general es harto conocido que las declaraciones de un abogado son admisibles en contra de su cliente. People v. Cassas, supra, pág. 722, citando a United States v. Margiotta, 662 F2d 131, 142 (1981); People v. Rivera, 58 AD2d 147, 149 (1977). Sin embargo, añadió el Tribunal, que este caso era distinguible. Del expediente no surge evidencia alguna que la declaración hecha por el licenciado Hirsch fue debidamente autorizada por su cliente como parte de una renuncia a su privilegio abogado-cliente. "Esto es particularmente importante en casos criminales donde el acusado retiene la autoridad para tomar decisiones cruciales sobre su defensa en contra de los cargos

criminales". <u>People v. Cassas</u>, supra, pág. 722, citando a <u>Jones v. Barnes</u>, 463 US 745, 751 (1983).

> Significativamente, y clave en la correcta disposición del caso, la declaración violaría el privilegio abogado-cliente porque no existe prueba alguna que evidencie que el acusado renunció su privilegio. Este privilegio existe "para asegurar que quien busca consejo legal pueda confiar plena y libremente en su abogado, y se asegure que sus confidencias no serán expuestas al público o a terceras personas en su detrimento". (Citas omitidas.) Más aún, en <u>People v. White</u>, 73 NY2d 468, 478 (1989), este Tribunal resolvió que "un acusado que acepta representación legal retiene autoridad ... sobre ciertas decisiones fundamentales referentes a su caso (*e.g.* si se declara culpable, si renuncia al derecho a juicio por jurado, si testifica a su favor, si apela un dictamen ...)". (Citas omitidas.)

> El hecho de que un abogado es el agente de su cliente no significa que ello constituye una renuncia al privilegio abogado-cliente. Para que ello sea así, esa autorización específica debe provenir del cliente. <u>People v. Cassas</u>, supra, págs. 723-724.

En atención a ello, el más alto foro judicial de Nueva York concluyó que la alegada confesión hecha por el licenciado Hirsch fue erróneamente admitida en evidencia. Ello, toda vez que el abogado no fue autorizado por el acusado a declarar a su nombre ante los agentes del orden público ni a renunciar al privilegio abogado-cliente. <u>People v. Cassas</u>, supra, págs. 723-724.

### E. *Quantum* de prueba en la Vista Preliminar y los fundamentos para Desestimación bajo la Regla 64(p)

Conforme nuestro ordenamiento procesal criminal y su jurisprudencia interpretativa, la vista preliminar contemplada en la Regla 23 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R.23, debe celebrarse en todos los casos

de delito grave. "En esencia, el propósito principal de esta vista es evitar que una persona sea sometida injustificadamente a los rigores de un proceso penal. Ello se logra mediante la exigencia de que el Estado presente *alguna* prueba sobre los elementos constitutivos del delito y sobre la conexión del imputado con su comisión". Pueblo v. Rivera Vázquez, 177 D.P.R. 868 (2010).

Por su parte, durante la celebración de la vista preliminar el imputado de delito puede presentar prueba a su favor y contrainterrogar a los testigos presentados por el Ministerio Público. De esta forma, si luego de evaluar la prueba desfilada el juez de instancia queda convencido que existe causa probable para acusar al imputado, debe autorizar que se presente la acusación en contra de éste. "De lo contrario, lo debe exonerar y ponerlo en libertad si es que estaba detenido". Pueblo v. Rivera Vázquez, supra. Véanse, además: Pueblo v. Ríos Alonso, 149 D.P.R. 761, 766-67 (1999); Pueblo v. Rodríguez Aponte, 116 D.P.R. 653, 663 (1985).

En este sentido, reiteradamente hemos resuelto que la vista preliminar posee los rasgos de un modelo procesal híbrido que permite evaluar, tanto la validez del arresto, como las probabilidades de que la persona sea culpable del delito grave que se le imputa. Pueblo v. Rivera Vázquez, supra. No obstante, cabe recalcar que en esta etapa del procedimiento no se hace una adjudicación en los méritos

sobre la culpabilidad del imputado. Véanse, Pueblo en interés del menor K.J.S.R., 172 D.P.R. 490 (2007); Pueblo v. Andaluz Méndez, 143 D.P.R. 656, 662 (1997); Pueblo v. Rodríguez Aponte, supra. En ese contexto,

> El propósito de la vista preliminar es tratar con probabilidades, tanto en lo referente a la comisión de un delito como en cuanto al autor de dicho delito.... [H]ay envuelta una doble situación de probabilidades: la de que determinado delito haya sido cometido y la de que determinada persona lo haya cometido. Pueblo v. Rodríguez Aponte, supra, págs. 663-664, citando a N. Frattallone, La Vista Preliminar, 63 Rev. Der. Puertorriqueño 231, 234 (1977).

En consecuencia, la vista preliminar no involucra una adjudicación final en los méritos. Su función no es establecer la culpabilidad del acusado. Más bien, su objetivo es auscultar si, en efecto, el Estado tiene una justificación adecuada para continuar con un proceso judicial en contra del imputado. En esta etapa, la prueba no tiene que evidenciar la culpabilidad del acusado más allá de duda razonable, sino, como mencionáramos, debe probar todos los elementos constitutivos del delito y conectar razonablemente al imputado con la comisión del mismo. Pueblo v. Rodríguez Aponte, supra.

Corolario de esta visión, el Ministerio Fiscal no está en la obligación de presentar toda la evidencia que posea. Pueblo v. López Pumarejo, 113 D.P.R. 349 (1982). Sólo se le requiere que presente aquella prueba constitutiva del *quantum* necesario para establecer que existe causa probable sobre todos los elementos del delito

y su conexión con el imputado. <u>Pueblo v. Pillot Rentas</u>, 169 D.P.R. 746 (2006); <u>Pueblo v. Rodríguez Aponte</u>, supra. <u>Vázquez Rosado v. Tribunal Superior</u>, 100 D.P.R. 592 (1972). En fin, la existencia de causa probable en la etapa de la vista preliminar concede la debida autorización al Ministerio Público para presentar la acusación de rigor.

Así, ante una determinación de causa probable para acusar, el remedio exclusivo del acusado lo es solicitar la desestimación del procedimiento celebrado en su contra al amparo de la Regla 64(p) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R.64(p). En esencia, esta moción le permite al acusado solicitar la desestimación del pliego acusatorio, o cualquier cargo incluido en éste, "cuando no se ha determinado causa probable por un juez u ordenado su detención para responder del delito con arreglo a la ley y a derecho". <u>Pueblo v. Rivera Vázquez</u>, supra; <u>Pueblo v. Jiménez Cruz</u>, 145 D.P.R. 803, 815 (1998).

Conforme la Regla 64(p) de Procedimiento Criminal, supra, ésta puede ser invocada por dos fundamentos; a saber: (1) la determinación de causa probable es contraria a derecho porque hubo una ausencia total de prueba en la vista preliminar; ó (2) se infringió alguno de los requisitos o derechos procesales que se deben observar en la vista preliminar. "Ambos fundamentos requieren una demostración clara del error que se imputa al magistrado, pues toda determinación de causa probable para acusar goza

de una presunción de corrección". Pueblo v. Rivera Vázquez, supra. Véanse, además, Pueblo v. Andaluz Méndez, supra, pág. 662; Pueblo v. Rivera Alicea, 125 D.P.R. 37, 42-43 (1989). Bajo el primer fundamento, debe auscultarse si en la vista preliminar hubo una situación de ausencia total de prueba. Ello no implica que la evaluación de un dictamen de causa probable constituya propiamente una apelación. Por el contrario, "es sólo en el caso particular de que haya ausencia total de prueba en la vista preliminar que se permite sustituir el criterio del juez que atienda la moción por el del magistrado que haya presidido la vista aludida". Pueblo v. Rodríguez Ríos, supra; Vázquez Rosado v. Tribunal Superior, 100 D.P.R. 592, 594 (1972).

> En tales circunstancias, se debe examinar la prueba de cargo y de defensa desfilada en la vista preliminar, y determinar si esa prueba establece la probabilidad de que esté presente cada uno de los elementos del delito y la conexión del imputado con éste. Además, se debe considerar que aunque la prueba pueda establecer la posible comisión de otro delito, **sólo procede desestimar ante un caso claro de ausencia total de prueba sobre uno o varios elementos del delito imputado, o sobre la conexión de la persona con éste.** (Énfasis nuestro.) Pueblo v. Rivera Vázquez, supra. Véase, además, Pueblo v. Rivera Alicea, supra.

III

En el caso que nos ocupa, el peticionario Fernández Rodríguez aduce que el testimonio del sargento Curbelo es inadmisible en evidencia debido a que fue obtenido en violación al privilegio abogado-cliente y en detrimento de su derecho a no autoincriminarse. A consecuencia de ello,

nos solicita que revoquemos la sentencia dictada por el Tribunal de Apelaciones y ordenemos la supresión del referido testimonio y el arma de fuego, municiones y cargador ocupados. Le asiste la razón, en parte.

### A. Privilegio abogado-cliente del señor Fernández Rodríguez y la admisibilidad del testimonio del sargento Curbelo

Primeramente, no tenemos duda alguna que entre el peticionario Fernández Rodríguez y el licenciado Carbone existió una relación abogado-cliente. Los documentos contenidos en el expediente judicial, así como las transcripciones de los testimonios del sargento Curbelo y del propio licenciado Carbone, revelan que durante el transcurso de esta relación fiduciaria el señor Fernández Rodríguez le confió al licenciado Carbone la información relacionada con la comisión de los actos delictivos imputados. En ese sentido, los requisitos esbozados en García Negrón v. Tribunal Superior, supra, pág. 732, se cumplen a cabalidad. A saber: (1) la comunicación entre el señor Fernández Rodríguez y el licenciado Carbone se originó con la expectativa de que no sería divulgada; (2) ese elemento de confidencialidad jugó un papel esencial para mantener la relación fiduciaria entre las partes; (3) la comunidad claramente considera que esta relación debe ser promovida diligentemente; y (4) el perjuicio que causó la divulgación de la comunicación es palpablemente mayor al beneficio obtenido. Consecuentemente, la comunicación en controversia -y toda la información confiada al

licenciado Curbelo- constituye materia privilegiada protegida por el privilegio abogado-cliente. Véase, Chiesa Aponte, Reglas de Evidencia de Puerto Rico 2009, supra, pág. 151.

Además, entendemos que los hechos pertinentes a la controversia de autos no presentan ninguno de los escenarios provistos por la otrora Regla 25(C) de Evidencia, supra, para que se considere inexistente el privilegio abogado-cliente. Es decir, el caso de epígrafe no presenta una situación en donde los servicios del abogado fueron solicitados u obtenidos para ayudar a cometer o planificar la comisión de un delito. Todo lo contrario. En esta ocasión, los servicios del licenciado Carbone fueron solicitados para fungir como protector de los derechos que le asisten a toda persona que desea confesar la comisión de un crimen. De igual forma, el caso de autos no involucra una comunicación que: (a) esté relacionada con la muerte de un cliente del abogado ni con un pleito entre sus respectivos herederos; (b) sea pertinente a una violación de los deberes mutuos que surgen de la relación abogado-cliente; (c) sea pertinente a una controversia relativa a un documento en que el abogado intervino en calidad de notario; o (d) sea pertinente a una materia de común interés para dos o más personas que son clientes del abogado.

En segundo lugar, entendemos que las circunstancias particulares de este caso tampoco muestran que el poseedor

del privilegio abogado-cliente haya renunciado al mismo, según lo pautado por las Reglas 33 y 34 de Evidencia de 1979, *supra*. En otras palabras, no se desprende del expediente, como tampoco se presentó prueba alguna, que demuestre que el señor Fernández Rodríguez renunció a su privilegio abogado-cliente. Al contrario, las mociones y recursos presentados, al igual que la prueba desfilada ante el Tribunal de Primera Instancia, demuestran que en ningún momento el señor Fernández Rodríguez divulgó la información confidencial a un tercero ajeno a la relación abogado-cliente.

Por ello, entendemos que el Tribunal de Apelaciones erró al concluir que la intención y el comportamiento del señor Fernández Rodríguez constituyó una renuncia implícita a su privilegio abogado-cliente. Esa línea de razonamiento no toma en consideración los antecedentes fácticos particulares del caso de marras. Nos explicamos.

El expediente judicial sostiene que al llegar al Cuartel General, el licenciado Carbone expresó que el señor Fernández Rodríguez **no emitiría declaración alguna sobre los hechos acontecidos porque se encontraba muy nervioso, pero que posteriormente sí lo haría.** Véanse, Apéndice de *certiorari*, págs. 15-16; Transcripción de la Vista Preliminar de 25 y 29 de octubre de 2007, págs. 6-9. Asimismo, resulta importante puntualizar que en el momento preciso en que el licenciado Carbone le divulgó la información privilegiada al sargento Curbelo **ya se le**

**habían leído las advertencias al señor Fernández Rodríguez y éste se encontraba en otro lugar, o sea, en una celda bajo la custodia de otros agentes del orden público.** Véase, Transcripción de la Vista Preliminar de 25 y 29 de octubre de 2007, págs. 46-47 y 49. Además, del propio testimonio del sargento Curbelo se desprende que el señor Fernández Rodríguez **no autorizó al licenciado Carbone a que emitiera declaración alguna a su nombre.** Véase, Transcripción de la Vista Preliminar de 25 y 29 de octubre de 2007, págs. 47-52.

El hecho de que durante la vista de determinación de causa para arresto la representación legal del imputado no haya objetado el testimonio del sargento Curbelo, no significa que ante las circunstancias presentes el imputado haya renunciado al privilegio abogado-cliente. Tampoco implica que el propio imputado, quien es el poseedor del privilegio, haya renunciado por no objetar una parte específica del testimonio. Si bien el privilegio abogado-cliente no tiene rango constitucional, en situaciones particulares como la presente tal privilegio se encuentra interrelacionado con el derecho constitucional a la no autoincriminación. J.B. Weinstein & M.A. Berger, Weinstein's Federal Evidence, Vol. 3, Sec. 503.03[1] (Joseph M. McLaughlin, ed., Mattew Bender 2011); Notas, The Attorney-Client Privilege: Fixed Rules, Balancing, and Constitutional Entitlement, 91 Harv. L. Rev. 464, 480 (1977). Resultaría en una injusticia

exigirle a un ciudadano conocimiento sobre materia evidenciaria y sobre la forma de levantar una objeción correcta, que sea oportuna y que esté fundamentada, como condición para el reconocimiento de sus derechos en aquellas instancias en que goza de una representación legal. Como sabemos, en el caso de autos el imputado contó con representación legal y, por lo tanto, sería incorrecto colegir que al no haber objetado él mismo, permitió la divulgación de información privilegiada.

Cónsono con lo anterior, resulta forzoso colegir que el señor Fernández Rodríguez no renunció implícitamente a su privilegio abogado-cliente. Aquí, al igual que en People v. Cassas, supra, los actos del cliente (señor Fernández Rodríguez), en unión a las circunstancias particulares presentadas, no apoyan otra conclusión. En consecuencia, el foro apelativo intermedio incidió al concluir que el testimonio del sargento Curbelo y el arma de fuego, cargador y municiones ocupadas eran admisibles en evidencia. Éstos fueron obtenidos en contra del privilegio abogado-cliente del imputado y de su derecho a no autoincriminarse.[6] Const. EE.UU., Enmd. V; Const. E.L.A., Art. II, Sec. 11; 32 L.P.R.A. Ap. IV, R.23 y R.24.

---

[6] Aclaramos, sin embargo, que la supresión de la evidencia ocupada en el caso de marras (arma de fuego, cargador y municiones) se decreta conforme a la normativa sobre el privilegio abogado-cliente y la garantía constitucional a la no autoincriminación. Ello, claro está, no es óbice alguno para que el Estado presente prueba separada e independiente a la actuación ilegal que sostenga la admisibilidad de dicha evidencia incautada. Véanse, Murray v. United States, 487 U.S. 533 (1988); Silverthorne v. United States, 251 U.S. 385 (1920). Véase, además, E.L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Bogotá, Ed. Forum, 1991, Vol. 1, págs. 321-325.

Véanse, además, <u>People v. Cassas</u>, supra, citando a <u>Jones v. Barnes</u>, supra, y <u>People v. White</u>, supra.

Ahora bien, lo expresado anteriormente no dispone por completo del asunto ante nuestra consideración. La supresión del testimonio del sargento Curbelo se limita única y exclusivamente a la parte que contempla información de naturaleza privilegiada. 32 L.P.R.A. Ap. IV, R.7.[7] Es decir, la inadmisibilidad del testimonio del sargento Curbelo se circunscribe a las expresiones vertidas por éste mediante las cuales narró lo divulgado por el licenciado Carbone en violación al privilegio abogado-cliente del señor Fernández Rodríguez. Véase, Chiesa Aponte, Reglas de Evidencia de Puerto Rico 2009, págs. 91-93. Véanse, además, <u>Gray v. Maryland</u>, 523 U.S. 185 (1998); <u>Richardson v. Marsh</u>, 481 U.S. 200 (1987).

Por consiguiente, el sargento Curbelo podrá testificar en su día sobre cualquier información que le conste de propio y personal conocimiento, como también sobre cualquier otra información que se derive del proceso de investigación que no sea de naturaleza privilegiada.

**B. Determinación de causa probable para acusar y la moción de desestimación presentada por el señor Fernández Rodríguez al amparo de la Regla 64(p) de Procedimiento Criminal**

---

[7] Hoy la Regla 107 de Evidencia, 32 L.P.R.A. Ap. VI, R.107, dispone lo siguiente:

Regla 107. Admisibilidad Limitada

Cuando determinada evidencia sea admisible en cuanto a una parte o para un propósito, y sea inadmisible en cuanto a otra parte o para otro propósito, el Tribunal, previa solicitud al efecto, limitará la admisibilidad de esa evidencia a su alcance apropiado e instruirá inmediatamente sobre ello al Jurado, de haberlo.

Conforme esbozamos en páginas anteriores, el *quantum* de prueba requerido en la vista preliminar que se celebra al amparo de la Regla 23 de Procedimiento Criminal, *supra*, le exige al Ministerio Público presentar evidencia que demuestre todos los elementos constitutivos de determinado delito y la conexión razonable del imputado con la comisión del mismo.

Así, pues, en esta ocasión surge del expediente que el 25 de mayo de 2007, fecha en que dio comienzo la vista preliminar, las partes estipularon la siguiente prueba: **(1) el informe de balística; (2) una prueba de ADN; (3) el análisis forense de la ropa incautada al señor Fernández Rodríguez; (4) servilletas y marcas de sangre de uno de los occisos; y (5) el registro del arma de fuego y la licencia de tiro al blanco del señor Fernández Rodríguez.** Véase, Apéndice de *certiorari*, págs. 146-147. Esta prueba estipulada, en unión a las declaraciones vertidas por el sargento Curbelo que no involucran materia privilegiada, así como los testimonios vertidos por los demás testigos presentados por la Fiscalía, es suficiente en derecho y cumple con el *quantum* de prueba exigido en la vista preliminar. En consecuencia, el Tribunal de Apelaciones actuó correctamente al avalar la determinación de causa probable para acusar alcanzada por el Tribunal de Primera Instancia.

Colegimos, pues, que el foro apelativo intermedio no incidió al sostener la determinación del foro primario

mediante la cual se declaró *no ha lugar* la moción de desestimación presentada por el señor Fernández Rodríguez al amparo de la Regla 64(p) de Procedimiento Criminal, supra. Contrario a lo alegado por el peticionario, no hubo una ausencia total de prueba durante la celebración de la vista preliminar. *Pueblo v. Rivera Vázquez*, supra; *Pueblo v. Andaluz Méndez*, supra. En cambio, la prueba estipulada entre las partes y la restante prueba desfilada durante la vista preliminar cumplió a cabalidad con el estándar requerido para sostener una determinación de causa probable para acusar al señor Fernández Rodríguez. Por ello, no procede que se desestimen los pliegos acusatorios presentados en contra del acusado. *Pueblo v. Rivera Vázquez*, supra; *Pueblo v. Andaluz Méndez*, supra; *Pueblo v. Rivera Alicea*, supra; *Pueblo v. Rodríguez Rios*, supra; *Vázquez Rosado v. Tribunal Superior*, supra.

Asimismo, es oportuno puntualizar que no cabe duda que de la prueba admisible y presentada en la vista preliminar se conecta al imputado con la comisión del delito de Asesinato y las infracciones a la Ley de Armas. De igual modo, de la referida prueba puede inferirse razonablemente, que la intención del señor Fernández Rodríguez cuando se presentó al Cuartel acompañado de su abogado fue para entregarse a las autoridades por estar relacionado con el crimen imputado.

### C. Derecho a no Autoincriminarse del señor Fernández Rodríguez y los Deberes de Lealtad y Confidencialidad del licenciado Curbelo para con su cliente

El caso bajo examen es uno que presenta circunstancias muy peculiares. Así, los hechos ante nos exhiben las dos perspectivas descritas anteriormente sobre las obligaciones que nacen de la relación abogado-cliente. Es decir, la controversia medular debe ser escudriñada desde una óptica ético-disciplinaria y otra probatoria-procesal. Ya hemos dispuesto de esta última, por lo que resta analizar las circunstancias y controversias presentadas bajo el prisma de la ética profesional.

Ciertamente, coincidimos con las expresiones del Juez Steidel Figueroa. Los deberes de lealtad y secreto profesional que emanan del Canon 21 de Ética Profesional, *supra*, y que todo abogado debe honrarle a sus clientes, tienen una relación directa con la garantía constitucional de toda persona a no autoincriminarse. Estos deberes toman mayor relevancia, y multiplican exponencialmente las repercusiones negativas, cuando la conducta impropia desplegada por el abogado consiste en divulgar de forma no autorizada información confidencial de su cliente. Ello es así, debido a que la conducta impropia desplegada implica la imposición de responsabilidad penal a su cliente. Consecuentemente, cuando un abogado incurre en este tipo de conducta impropia, aparte de conducirse en detrimento de su cliente y los derechos constitucionales que le cobijan, actúa en contra de los deberes éticos

impuestos por el Canon 21 de Ética Profesional, supra. Tal proceder es altamente censurable. 4 L.P.R.A. Ap. IX, C.21. Véanse, además, Mueller, Christopher y Kirkpatrick, Laird, Federal Evidence, Thompson/West, 2007, Vol. 2, Sec. 5:13, pág. 519; In re: Rochet Santoro, 174 D.P.R. 123 (2008); In re: Monge García, 173 D.P.R. 379 (2008).

En esta ocasión, según señaláramos, surge del expediente judicial que el licenciado Carbone divulgó información privilegiada de su cliente sin la debida autorización. Ello constituye un quebrantamiento de los deberes de lealtad y confidencialidad impuestos por el Canon 21 de Ética Profesional, supra. Consecuentemente, debe ordenársele a la Procuradora General que investigue la conducta del licenciado Carbone como representante legal del señor Fernández Rodríguez para la iniciación del procedimiento disciplinario correspondiente. Véanse, In re: Martínez Almodóvar, 2011 T.S.P.R. 21; In re: Pérez Riveiro, 2010 T.S.P.R. 230.

En vista de lo anterior, advertimos que cualquier letrado que incurra en conducta de esta naturaleza y en contravención a los principios que rigen el Código de Ética Profesional, será objeto de severas sanciones disciplinarias.

IV

Por los fundamentos antes esbozados, se modifica la sentencia emitida por el Tribunal de Apelaciones a los fines de no admitir en evidencia las partes del testimonio

del sargento Curbelo que involucran materia privilegiada. Asimismo, ordenamos la supresión del arma de fuego, cargador y municiones ocupadas por ser producto de dicho testimonio. Véase, nota 6, supra.

Sin embargo, confirmamos la determinación del foro apelativo intermedio a los fines de declarar *no ha lugar* la moción de desestimación presentada por el señor Fernández Rodríguez bajo la Regla 64(p) de Procedimiento Criminal, supra. Se devuelve el caso de autos al Tribunal de Primera Instancia para la continuación de los procedimientos conforme con los pronunciamientos vertidos en esta Opinión.

Finalmente, se le ordena a la Oficina de la Procuradora General a que investigue la conducta desplegada por el licenciado Carbone en calidad de representante legal del señor Fernández Rodríguez para la iniciación del procedimiento disciplinario correspondiente.

Se dictará sentencia de conformidad.


Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico
        Recurrido

            v.

Waldemar Fernández Rodríguez        CC-2009-0622
        Peticionario

Certiorari


SENTENCIA

San Juan, Puerto Rico, a 9 de diciembre de 2011.

Por los fundamentos enunciados, se modifica la sentencia emitida por el Tribunal de Apelaciones a los fines de no admitir en evidencia las partes del testimonio del sargento Curbelo que involucran materia privilegiada. Asimismo, ordenamos la supresión del arma de fuego, cargador y municiones ocupadas por ser producto de dicho testimonio. Véase, nota 6, supra.

Sin embargo, confirmamos la determinación del foro apelativo intermedio a los fines de declarar *no ha lugar* la moción de desestimación presentada por el señor Fernández Rodríguez bajo la Regla 64(p) de Procedimiento Criminal, supra. Se devuelve el caso de autos al Tribunal de Primera Instancia para la continuación de los procedimientos conforme con los pronunciamientos vertidos en esta Opinión.

Finalmente, se le ordena a la Oficina de la Procuradora General a que investigue la conducta desplegada por el licenciado Carbone en calidad de representante legal del señor Fernández Rodríguez para la iniciación del procedimiento disciplinario correspondiente.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton, disiente con opinión escrita.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

       v.                     CC-2009-622

Waldemar Fernández Rodríguez

    Peticionario


Opinión Disidente emitida por el Juez Presidente señor HERNÁNDEZ DENTON


San Juan, Puerto Rico, a 9 de diciembre de 2011.

Coincidimos con la Opinión de una mayoría de este Tribunal de que no se configuró una renuncia al privilegio abogado-cliente cuando el abogado divulgó la información privilegiada en el Cuartel General mientras su cliente estaba bajo custodia en otro lugar. Sin embargo, entendemos que sí se renunció al referido privilegio al no objetarse la divulgación de la información privilegiada en la etapa de vista para la determinación de causa probable para arresto. Por ello, nos vemos forzados a disentir.

I.

A raíz de un doble asesinato ocurrido en 2006, el Sr. Waldemar Fernández Rodríguez acudió al Cuartel

General de la Policía en compañía del Lcdo. Luis Carbone. Este último le informó al Sgto. José Curbelo Muñiz que su cliente no declararía aún porque estaba muy nervioso, pero que luego haría una declaración completa de los hechos, pues estaba relacionado con el referido crimen. Posteriormente, mientras el acusado estaba bajo custodia, el sargento Curbelo Muñiz entrevistó al licenciado Carbone a solas. Dicho abogado les indicó a los agentes dónde estaba el arma con la que supuestamente se cometió el crimen. Así, estos encontraron el arma, el cargador, seis balas y tres casquillos.

En 2007, el Ministerio Público presentó dos denuncias por asesinato en primer grado, tipificado en el Art. 106 del Código Penal de 2004, 33 L.P.R.A. sec. 4734, y tres denuncias por infracciones a los Arts. 5.04 y 5.15 de la Ley de Armas de Puerto Rico, Ley Núm. 404 de 11 de septiembre de 2000, según enmendada, 25 L.P.R.A. secs. 458C y 458N, respectivamente. Luego, se celebró la vista para la determinación de causa probable para arresto, a la cual compareció el señor Fernández Rodríguez representado por el licenciado Carbone y **otros tres abogados de defensa**: la Lcda. Carmen Dolores Ruiz López, el Lcdo. René José Muñoz Del Castillo y el Lcdo. Carlos Ramos Pantojas. Además, estaban presentes el Lcdo. Rafael Anglada López, como primo y "tutor protectivo" del señor Fernández Rodríguez, y la Lcda. Joanna Gilot Openheimer. Durante la vista, el sargento Curbelo Muñiz declaró extensa y detalladamente sobre la información provista por el licenciado Carbone. En ese

momento, **ninguno de los cuatro abogados de defensa, ni el señor Fernández Rodríguez, objetaron este testimonio.**

Tampoco aludieron al privilegio abogado-cliente en el contrainterrogatorio al sargento Curbelo Muñiz. Consiguientemente, el foro primario halló causa probable para arresto.

Así las cosas, se celebró la vista preliminar, a la cual compareció el acusado con sus cuatro abogados de defensa. En esta etapa de los procedimientos, las partes estipularon el informe de balística, el certificado de análisis forense de ADN sobre la ropa del señor Fernández Rodríguez, una servilleta y manchas de sangre en el arma, que resultó ser la sangre de uno de los occisos, el registro de armas de fuego y la licencia vencida de tiro al blanco del señor Fernández Rodríguez. Además, testificaron el sargento Curbelo Muñiz, la Sra. Glenda Pérez Román, el Sr. Fernando Fernández, el Sr. Harold Huntley, la Sra. Brenda Pla Díaz, el Lcdo. Ovidio Zayas y la Agente Daliza Ortiz Claudio.

Por su parte, el sargento Curbelo Muñiz ofreció básicamente el mismo testimonio que prestó en la vista para la determinación de causa probable para arresto. En esta ocasión, **la defensa y el señor Fernández Rodríguez tampoco objetaron el testimonio del sargento Curbelo Muñiz sobre lo que le declaró el licenciado Carbone.** Durante su contrainterrogatorio, la licenciada Ruiz López le preguntó al sargento Curbelo Muñiz los detalles de la conversación que tuvo con el licenciado Carbone. Es decir, prácticamente se reprodujo el testimonio brindado en el directo, para

luego mencionar el privilegio abogado-cliente por primera vez en el proceso criminal. Veamos:

P: ¿Qué le dijo, si algo, el Lcdo. Carbone?

R: Le pregunté al Lcdo. Carbone que dónde se encontraba el arma que había utilizado su cliente con relación a los hechos violentos que habían ocurrido en la Guaracanal. Éste me manifestó que esa arma se encontraba en una jardinera cerca de la Hummer. Inmediatamente, procedí a tomar mi teléfono celular, llamé a la agente Daliza Ortiz que estaba en la escena con la sargento Trinidad ayudándole allí en la escena, le expliqué en dónde se encontraba y le di el teléfono celular al Lcdo. Carbone para que le explicara ya que él tenía conocimiento.

P: ¿Y usted se dialogó con el Lcdo. Carbone de todo esto…?

R: No, él estaba hablando por teléfono, cuando terminó de hablar por teléfono pues se quedó en la oficina conmigo esperando que recibiera alguna llamada.

P: ¿Usted le preguntó en dónde estaba el arma, usted le preguntó…?

R: Sí, le pregunté dónde estaba…

P: ¿Detalles sobre toda la situación?

R: No, simplemente le pregunté dónde estaba el arma con relación a los hechos.

P: Y entonces yo le pregunto, usted me ha dicho anteriormente que usted reconoce que la persona tiene derecho a no declarar.

R: Eso es así.

P: Y usted reconoce ese derecho.

R: Eso es así.

P: Le pregunto también si usted sabe que existe también un privilegio entre abogado y cliente y que la información entre abogado y cliente es privilegiada y que la única persona que puede responder a ese derecho es el cliente. Transcripción Estipulada de la Vista Preliminar, 25 y 29 de octubre de 2007, páginas 50-51.

Acto seguido, el sargento Curbelo Muñiz reconoció que, a su entender, el acusado no renunció al privilegio abogado-cliente, ni autorizó al licenciado Carbone a que declarara a

su nombre. Fue entonces cuando la defensa solicitó la supresión del testimonio del sargento Curbelo Muñiz. Luego de un intenso intercambio entre el Ministerio Público y la defensa, el juez se reservó el fallo sobre la supresión solicitada.

Otro testimonio que recibió el foro primario, sin objeción de la defensa, fue el de la agente Ortiz Claudio. Esta declaró que recibió por teléfono las instrucciones del licenciado Carbone para encontrar el arma, las balas, los casquillos y el cargador. A su vez, reconoció en el contrainterrogatorio que encontraron la evidencia gracias a lo que el licenciado Carbone les comunicó.

Presentada toda la prueba, quedó sometido el caso. Así las cosas, el señor Fernández Rodríguez presentó una moción de supresión de evidencia, en la cual alegó que el testimonio del sargento Curbelo Muñiz era inadmisible por contener materia privilegiada. También, adujo que el arma y las municiones ocupadas eran inadmisibles, pues su descubrimiento fue producto directo de la información privilegiada. Consecuentemente, el Tribunal de Primera Instancia descalificó al licenciado Carbone como abogado del señor Fernández Rodríguez y lo citó para que compareciera como testigo a la vista de supresión de evidencia. En esa vista, el licenciado Carbone negó haberle divulgado la información al sargento Curbelo Muñiz. Finalmente, el foro primario no le adjudicó credibilidad al licenciado Carbone y resolvió que la evidencia era admisible porque el señor Fernández Rodríguez renunció implícitamente al privilegio

abogado-cliente cuando acudió al Cuartel General a entregarse.

Así las cosas, el foro primario encontró causa probable para acusar al señor Fernández Rodríguez. Presentadas las acusaciones correspondientes, la defensa solicitó la desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, 34 L.P.R.A. Ap. II R.64(p). En esta, adujo que la determinación de causa probable en la vista preliminar fue contraria a derecho ya que la prueba presentada durante la misma era inadmisible por ser producto de información confidencial cobijada por el privilegio abogado-cliente. Planteó que el abogado no tenía el consentimiento del cliente para divulgar las comunicaciones confidenciales habidas entre ellos. Además, sostuvo que la divulgación violó su derecho a no autoincriminarse. Igualmente, alegó que, sin la información privilegiada y la evidencia física obtenida como fruto de esta, no se satisfacía el estándar de prueba para determinar causa probable. Ello, pues sostuvo que la única prueba que vincula al señor Fernández Rodríguez con los hechos delictivos es la que el Ministerio Público obtuvo ilegalmente del abogado.

El foro de primera instancia denegó la desestimación solicitada y concluyó que el testimonio del sargento Curbelo Muñiz era admisible. A pesar de que encontró que no hubo una renuncia al privilegio abogado-cliente, aplicó por analogía la doctrina de autoridad aparente relacionada con la normativa sobre registros y allanamientos irrazonables. En particular, el foro primario expresó que el sargento Curbelo

Muñiz creyó de buena fe que el licenciado Carbone estaba autorizado a divulgar la información. Insatisfecho, el señor Fernández Rodríguez acudió ante el Tribunal de Apelaciones.

El foro apelativo intermedio confirmó al Tribunal de Primera Instancia, pero por entender que el señor Fernández Rodríguez renunció tácitamente al privilegio abogado-cliente, al acudir al Cuartel General para entregarse y no objetar el testimonio del sargento Curbelo Muñiz.

Aún inconforme, el señor Fernández Rodríguez acudió ante nos y, en esencia, planteó los mismos fundamentos en que se basó la moción de desestimación.

## II.

El privilegio abogado-cliente es "el privilegio no constitucional más sólido de nuestro ordenamiento". R. Emmanuelli, _Prontuario de Derecho Probatorio de Puerto Rico_, Editorial Situm, 2da ed., 2005, pág. 322. Su propósito es proteger la confidencialidad de las comunicaciones entre un abogado y su cliente, para fomentar la más amplia comunicación entre ambos. Íd.

Las Reglas de Evidencia de Puerto Rico de 1979, 32 L.P.R.A. Ap. IV (ed. 2008), vigentes al momento de los hechos, reglamentaban el privilegio abogado-cliente. En lo pertinente, la Regla 25 de dicho cuerpo legal disponía lo siguiente:

> (A) Según usadas en esta regla, las siguientes expresiones tendrán el significado que a continuación se indica:
>
> > (1) Abogado: Persona autorizada o a quien el cliente razonablemente creyó autorizada a ejercer la profesión de abogado; incluye

a la persona así autorizada y a sus asociados, asistentes y empleados de oficina.

(2) Cliente: Persona natural o jurídica que, directamente o a través de representante autorizado, consulta a un abogado con el propósito de contratarle o de obtener servicios legales o consejo en su capacidad profesional; incluye al incapaz que consulta él mismo a un abogado o cuyo tutor o encargado hace tal gestión con el abogado a nombre del incapaz.

(3) Comunicación confidencial: Aquella comunicación habida entre un abogado y su cliente en relación a alguna gestión profesional, basada en la confianza de que no será divulgada a terceras personas, salvo a aquellas personas que sea necesario para llevar a efecto los propósitos de la comunicación.

(B) Sujeto a los dispuesto en esta regla, el cliente, sea o no parte en el pleito o acción, tiene el privilegio de impedir que otro revele una comunicación confidencial entre él y su abogado. El privilegio puede ser invocado no sólo por el poseedor del privilegio que es el cliente, sino también por una persona autorizada a invocarlo en beneficio de éste, o por el abogado a quien la comunicación fue hecha si lo invoca a nombre de y para el beneficio del cliente. 32 L.P.R.A. Ap. IV R. 25(B) (ed. 2008).

Conforme a la regla, el privilegio puede ser invocado por su poseedor: el cliente. Asimismo, pueden invocarlo una persona con autorización para ello o el abogado a quien la comunicación fue hecha, si lo invocan a nombre de y para beneficio del cliente. E.L. Chiesa Aponte, Tratado de Derecho Probatorio, República Dominicana, Ed. Corripio, [s. año], Tomo 3, pág. 223; J.B. Weinstein & M.A. Berger,

Weinstein's Federal Evidence, Vol. 3, Sec. 503.20[3] (Joseph M. McLaughlin, ed., Matthew Bender 2011).[8]

Para que la comunicación sea privilegiada, debe basarse en la confianza de que no se divulgará a terceras personas, a menos que sea necesario para alcanzar los fines de la comunicación. E.L. Chiesa Aponte, *op cit.*, pág. 222. Precisamente, hemos establecido que para que un tribunal reconozca una comunicación como privilegiada tienen que concurrir cuatro (4) requisitos:

> (1) la comunicación tiene que haberse originado en la confianza de que no será divulgada; (2) este elemento de confiabilidad tiene que ser esencial para mantener plena y satisfactoriamente la relación entre las partes; (3) la relación debe ser una que la comunidad considere que debe ser diligentemente promovida; y, (4) que el perjuicio que causaría la divulgación de la comunicación sea mayor que el beneficio obtenido por la correcta disposición del pleito. García Negrón v. Tribunal Superior, 104 D.P.R. 727, 734 (1976).

Como todos los privilegios, incluyendo los de rango constitucional, el privilegio abogado-cliente es renunciable. E.L. Chiesa Aponte, *op cit.*, pág. 233. Esta renuncia debe ser voluntaria, consciente e inteligente. Pueblo en interés del menor J.A.B.C., 123 D.P.R. 551, 561 (1989); Pueblo v. Pellot Pérez, 121 D.P.R. 791, 802 (1988). Es decir, la renuncia debe ser realizada sin que medie intimidación, coacción o violencia por parte del Estado.

---

[8] "The privilege may be asserted by the client, the client's guardian or conservator, the personal representative of a deceased client, or the successor, trustee, or similar representative of a corporation, association, or other organization, whether or not the organization is in existence". Weinstein's Federal Evidence, *supra,* Vol. 3, Sec. 503.20[3].

Pueblo v. Ruiz Bosch, 127 D.P.R. 762, 775 (1991); Pueblo
en interés del menor J.A.B.C., *supra*. Con relación a esto,
la Regla 33 de las Reglas de Evidencia de 1979 disponía que:

> Una persona que de otro modo tendría el
> privilegio de no divulgar un asunto o materia
> específico, o de impedir que otra persona lo
> divulgue, no tiene tal privilegio respecto a
> dicho asunto o materia si el tribunal determina
> que esa persona, o cualquier otra mientras era
> la poseedora del privilegio, se obligó con otro
> a no invocar el privilegio, o que sin haber
> sido coaccionada y con conocimiento del
> privilegio, divulgó cualquier parte del asunto
> o materia, **o permitió tal divulgación por otra
> persona.** Esta regla no se aplicará a los
> privilegios establecidos en las Reglas 23 y 24.
> 32 L.P.R.A. Ap. IV R. 33 (ed. 2008). (Énfasis
> suplido).

Asimismo, la Regla 34 del mismo cuerpo legal establecía
que "el juez que preside un caso podrá admitir una
comunicación de otra manera privilegiada cuando determine
que la conducta del poseedor del privilegio equivale a una
renuncia, independientemente de lo dispuesto en la Regla
33". 32 L.P.R.A. Ap. IV R. 34 (ed. 2008). Así pues, esta
regla confiere discreción al tribunal para admitir materia
privilegiada cuando entienda que la conducta del poseedor
del privilegio es incompatible con la confidencialidad de
la información. R. Emmanuelli, *op cit.*, pág. 393. El
ejemplo más común es cuando se trae a colación materia que
pudiera estar protegida por algún privilegio y la parte
que posee el privilegio no hace la oportuna y correcta
objeción ante el tribunal. Íd. Al desfilar la prueba sin
objeción, la misma se admite. Íd.

Este deber de objetar para que el privilegio no se
entienda renunciado también aplica cuando es el abogado

quien divulga la información a un tercero. Al respecto, el profesor Chiesa Aponte sostiene en su Tratado de Derecho Probatorio que "el privilegio impide a un abogado divulgar una comunicación confidencial que le hizo el cliente, y si el abogado le divulga a un tercero la comunicación confidencial, **el tercero no podrá testificar sobre ella ante objeción del cliente (poseedor del privilegio)** o su representante". E.L. Chiesa Aponte, *op cit.*, pág. 236. (Énfasis suplido).

En la jurisdicción federal, la jurisprudencia[9] y varios tratadistas reconocidos en el campo del derecho probatorio también han concluido que la falta de objeción ante la admisión de prueba cobijada por el privilegio abogado-cliente equivale a una renuncia a este privilegio. En específico, el tratado Weinstein's Federal Evidence expresa lo siguiente:

> The privilege is not automatic: it must be asserted whenever privileged evidence is sought to be discovered or introduced. Failure to assert the privilege when the evidence is first presented constitutes a voluntary waiver. In addition to

---

[9] <u>United States v. Suarez</u>, 820 F. 2d 1158 (11th Cir., 1987) (at the point where the attorney-client communications are no longer confidential, where there has been disclosure of a privileged communication, there is no justification for retaining the privilege); <u>United States v. Gurtner</u>, 474 F. 2d 297, 299 (9th Cir., 1973) (The failure to assert the privilege when the evidence was first presented constituted a voluntary waiver of the right… Once the subject matter is disclosed by a knowing failure to object there is nothing left to protect from disclosure); <u>Banks v. Office of Senate Sergeant-at-Arms</u>, 233 F.R.D. 1, 9 (D.D.C. 2005) (Failure to assert the privilege within a reasonable time, without a showing of good cause, constitutes a waiver of the privilege); <u>Perrington v. Berger Branswig Corp.</u>, 77 F.R.D. 455 (1978) (By failing to make a timely objection, the client waived any privilege that may have existed with respect to the statements.)

raising the privilege objection, the claimant
generally must also refrain from disclosing the
privileged information until the court has ruled
on the privilege claim. <u>Weinstein's Federal
Evidence</u>, *supra*, Vol. 3, Sec. 503.20[2].

Asimismo, el referido tratado sostiene que: "[i]f the
client is present at a hearing at which privileged
information is sought and is aware of his or her rights,
the client or the attorney must assert the privilege or it
will be deemed waived". <u>Weinstein's Federal Evidence</u>,
*supra,* Vol. 3, Sec. 503.43.

Por otra parte, el tratado McCormick on Evidence también
asevera que: "if the holder of the privilege fails to
claim his privilege by objecting to disclosure by himself
or another witness when he has an opportunity to do so, he
waives his privilege as to the communications so
disclosed". K.S. Broun y otros, <u>McCormick on Evidence</u>, 6ta
ed., Thomson West, 2006, pág. 421. Por lo tanto, si un
tercero declara sobre información privilegiada al amparo
del privilegio abogado-cliente, la defensa o el poseedor
del privilegio tienen que objetar oportunamente e invocar
el mismo para que no se entienda renunciado.

Una vez el cliente renuncia al privilegio abogado-cliente
en una etapa del procedimiento, esa renuncia se extiende a
las etapas posteriores, sobre todo si se trata de testimonio
en corte. E.L. Chiesa Aponte, *op cit.*, pág. 235. En la
jurisdicción federal, la opinión predominante al respecto
también sostiene lo anterior. En específico, el tratado
McCormick on Evidence explica lo siguiente: "When at an
earlier trial or stage of the case the privilege has been

waived and testimony as to the privileged communications elicited without objection, the prevailing view is that this is a waiver also for any subsequent hearing of the same case." <u>McCormick on Evidence</u>, *op cit.*, pág. 424.

Por último, debemos recalcar que el privilegio abogado-cliente, al igual que los demás privilegios decretados en las Reglas de Evidencia, se interpreta restrictivamente. Regla 35 de Evidencia, 32 L.P.R.A. Ap. IV R. 35 (ed. 2008). *Véase, además:* <u>Lugo Ortiz v. Ferrer</u>, 85 D.P.R. 862, 871 (1962). Consiguientemente, esta interpretación restrictiva del privilegio acarrea la interpretación liberal de la renuncia al privilegio. E.L., Chiesa Aponte, *op cit.*, pág. 235.

Además de lo dispuesto por estas Reglas de Evidencia, el Canon 21 de Ética Profesional le impone al abogado, como parte de su deber de fidelidad al cliente, la obligación de no divulgar sus secretos o confidencias y de adoptar medidas adecuadas para evitar su divulgación. 4 L.P.R.A. Ap. IX C. 21. Por lo tanto, el abogado está obligado a levantar el privilegio abogado-cliente para proteger las confidencias de su cliente cuando surja la necesidad. R. Emmanuelli, *op cit.*, pág. 325.

III.

La Opinión de este Tribunal resuelve que el señor Fernández Rodríguez no renunció al privilegio abogado-cliente, ya que, cuando el licenciado Carbone divulgó la información privilegiada al sargento Curbelo Muñiz, el acusado estaba bajo custodia en otro lugar. Además, sostiene

que el acusado no autorizó a su abogado a declarar a su nombre. **Coincidimos en que no hubo renuncia al privilegio en ese momento.** Sin embargo, somos del criterio de que sí hubo una renuncia al privilegio abogado-cliente en la vista de determinación de causa probable para arresto, debido a la falta de objeción de la defensa y del cliente al testimonio del sargento Curbelo Muñiz. Dicha renuncia se extiende a la etapa de vista preliminar, pues, como expresamos, una vez renunciado el privilegio, su renuncia se extiende a las etapas posteriores de los procedimientos. E.L. Chiesa Aponte, *op cit.*, pág. 235. La Opinión mayoritaria de este Tribunal no considera la posibilidad de que se hubiera renunciado al referido privilegio en alguna de estas dos vistas. Veamos.

En la etapa de vista para la determinación de causa probable para arresto, el señor Fernández Rodríguez compareció representado por cuatro abogados. Además, le acompañaban otros dos abogados, aunque no en calidad de representantes legales. Durante esa vista, el sargento Curbelo Muñiz declaró en detalle sobre la información que le proveyó el licenciado Carbone y la manera en que ello propició el descubrimiento de la evidencia física cuya inadmisibilidad solicitó la defensa. Ninguno de los cuatro abogados de defensa objetó el referido testimonio. Tampoco objetaron los otros dos abogados que asistieron a la vista como acompañantes del entonces imputado. En cambio, la defensa permitió la divulgación de la información que estaba protegida por el privilegio abogado-cliente. Esto, a pesar

de que la Regla 25 de Evidencia facultaba a los allí presentes para invocar el privilegio en beneficio del señor Fernández Rodríguez e impedir dicho testimonio del sargento Curbelo Muñiz. 32 L.P.R.A. Ap. IV R. 25 (ed. 2008). Con relación a esto, el derecho aplicable es claro y específico al preceptuar que la **falta de objeción** a la divulgación de la información confidencial equivale a una renuncia al privilegio.

Por todo lo anterior, nos vemos forzados a concluir que el señor Fernández Rodríguez renunció al privilegio abogado-cliente en la vista para la determinación de causa probable para arresto y dicha renuncia se extiende a las etapas posteriores del procedimiento criminal. Por lo tanto, en este caso, la renuncia al privilegio se extiende a la etapa de vista preliminar.

Aún si concluyéramos que en la vista para la determinación de causa probable para arresto no se renunció al referido privilegio, igualmente pudiéramos concluir que hubo dicha renuncia en la vista preliminar. En esta, el sargento Curbelo Muñiz volvió a declarar detalladamente sobre la información divulgada por el licenciado Carbone. Asimismo, la agente Ortiz Claudio testificó sobre lo que le comunicó el licenciado Carbone por teléfono respecto a la ubicación de la evidencia física que alegadamente el señor Fernández Rodríguez enterró en la jardinera. De nuevo, ninguno de los cuatro abogados de defensa objetaron estos testimonios. No fue hasta el contrainterrogatorio del sargento Curbelo Muñiz que la licenciada Ruiz López mencionó por primera vez el

privilegio abogado-cliente, luego de ella misma provocar que se reprodujera por completo el testimonio sobre la información "privilegiada" cuya admisión ahora pretenden impedir.

Nuevamente, la Regla 33 de Evidencia dispone que una persona no tendrá el privilegio abogado-cliente si permitió la divulgación de la información por otra persona. 32 L.P.R.A. Ap. IV R. 33 (ed. 2008). Si la defensa quería mantener la confidencialidad de las comunicaciones entre el licenciado Carbone y el señor Fernández Rodríguez, debió objetar oportunamente el testimonio del sargento Curbelo Muñiz y de la agente Ortiz Claudio. Ello incluye al acusado, quien tampoco objetó.

Por todo lo anterior, concluimos que, en el caso de autos, se renunció al privilegio abogado-cliente, por lo que eran admisibles en evidencia el testimonio del sargento Curbelo Muñiz y la evidencia física obtenida gracias a la divulgación por el licenciado Carbone de las comunicaciones habidas con su cliente. En consecuencia, la vista preliminar se celebró conforme a derecho y no procedía desestimar las acusaciones al amparo de la Regla 64(p) de Procedimiento Criminal, *supra.*

Federico Hernández Denton
Juez Presidente